WALTER H. RICKEY, respondent,

*v.*

MOON CLAY AND KAOLIN COMPANY et al., appellants.

[Decided October 11th, 1918.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Backes, who filed the following opinion:

In 1913 the complainant, Rickey, obtained from the defendant Moon what has been termed an option agreement, whereby Moon agreed to sell to Rickey his clay lands in Hamilton township, at any time within two years, for $6,000 per acre for the best clay lands, and $1,000 per acre for the balance. In February of the

following year, Moon extended the option for a further term of two years, or "until the deal now pending is closed." The deal was Rickey's negotiations with the Pennsylvania railroad for a strip of land for its new freight line across New Jersey, between Philadelphia and New York. Rickey then interested the defendant Muschert and persuaded him to secure a loan of $3,000 from his friend Watson upon a promise to pay Muschert one-tenth part of the profits on the option agreement. Rickey assigned the option to Watson as collateral security and reduced to writing the ten per cent. agreement with Muschert. He then got from Moon a commission agreement, wherein Moon agreed to pay ten per cent. commission upon all sales of his lands and twenty per cent. upon all receipts from condemnation proceedings. Thereupon the complainant and Muschert and J. Lefferts Conard, the latter then an attorney-at-law of this state, entered into what has been called the three-party agreement, wherein it was stipulated that Muschert was to hold the Moon-Rickey agreements (I do not recall whether the commission agreement was specially mentioned) for the benefit of the three, subject to the lien of the Watson loan, and that to promote "the operation" Muschert was to advance to Conard $5,000 to cover expenditures to date, and a further sum not exceeding $2,000 for future promotion. The complainant and Conard were to give their attention and efforts, Conard his professional skill, in advancing the enterprise, which was understood to be defending condemnation proceedings of the railroad company. Out of the profits Muschert was first to retain $10,000, made up of the $3,000 borrowed from Watson, the $5,-000 paid to Conard, and the $2,000 to be then later advanced. The agreement then provided that all of the profits should be divided among the three, share and share alike, "after the deduction of the said sum of $10,000 hereinbefore mentioned, which said sum shall be regarded as expenses and first deducted out of said profits." The condemnation proceedings failed of realization, and then Muschert, Conard and Moon formed the Moon Clay and Kaolin Company, and took over the clay lands for $206,000 of the capital stock of the company, under arrangement with Moon that he was to sell his holdings to Muschert and Conard for some $50,000. The clay company is now owned by

Muschert and Conard and is operating the clay pits. The complainant was not permitted to participate. He was practically frozen out. He then filed this bill to impress the trust of the three-party agreement and for an accounting. In their answer the defendants Muschert and Conard set up Rickey's ten per cent. commission agreement, and claimed that they were operating under it in connection with the three-party agreement, and on the witness-stand they both expressed themselves as willing to assume Moon's obligation to pay the commission on a sales price of $206,000, to be divided according to the terms of the three-party agreement. Upon the court's suggestion, the complainant asked leave to amend, which was granted.

The vice-chancellor (after argument).

When the pleadings are amended as directed, this will be a bill for an accounting for profits in a joint venture. The admitted profits are ten per cent. on $206,000, viz., $20,600, and these are to be divided equally between the complainant and Conard and Muschert, after Mr. Muschert deducts $8,000, viz., the $3,000 due to Watson, and the $5,000 he advanced to Conard. The terms of the agreement were that he was to deduct $10,000, but this included the $2,000 which he was to later advance but did not. The three-party agreement shows clearly the final arrangement of the parties, and this was that all over and above $10,000 (now $8,000) was to be divided, share and share alike. It was urged during the course of the trial and on the argument that the loan from Watson to Rickey should be taken from Rickey's share, but this manifestly was not the bargain. The $3,000 loaned to Rickey, which Muschert secured, and the $5,000 paid to Conard, and the other $2,000 which Muschert promised, are treated by the three-party agreement as expenses of the enterprise, to be paid out of the profits. In ascertaining what is Rickey's due the total of these sums ($8,000) is to be deducted and the balance divided. And so with Muschert's ten per cent. agreement for securing the loan from Watson. That is also merged in the three-party agreement and controlled by the terms of the division.

The claim made by Conard against Rickey that he loaned him

$1,750 upon the understanding that it was an advance on account of Rickey's prospective profits and to be deducted upon final settlement, is not sustained by the proofs. The money was paid by Conard to Rickey shortly after the making of the three-party agreement, and at a time when Rickey was known to be insolvent, and when the prospects of making a profit were none too bright, and when Conard could have little hope of repayment if he were lending. The payment to Rickey is shown by two checks of Conard, one for $1,000 and the other for $750, but Conard took nothing from Rickey to show that they were loans. The presumption is that the checks were given in payment of an obligation, and Rickey says that that is why they were given. His testimony is that Conard and he agreed to divide equally the $5,-000 Muschert was to advance under the three-party agreement, and I believe him as against the denial and explanation of Conard, and his story is borne out, in a measure, by the fact that the first payment made by Muschert to Conard on the day after the three-party agreement was made was for $2,000, and on the following day Conard gave Rickey his check for $1,000. On April 30th Muschert gave to Conard another $1,500, and twenty days later Conard gave Rickey his second check for $750. There is still $750 due Rickey from Conard, one-half of the balance collected from Muschert.

The decree will read that Muschert pay to Watson $3,000; that the established gross profits are $20,600, from which $8,-000 is to be deducted; and the balance divided into three parts. One-third will be adjudged to Rickey.

Mr. Dawes—Is there any interest?

The Vice-Chancellor—As I interpret the three-party agreement, the profit to be divided was all in excess of $10,000 net ($8,000, as it has turned out). That was the stipulation of the parties. The language is plain and explicit. If the written document does not correctly disclose the agreement of the parties, a bill to reform should have been filed.

As to the interest on the Watson loan, Muschert was not to pay more of the loan than the $3,000 principal. Whatever interest has accrued is Rickey's debt, and the decree may provide that this interest be paid out of Rickey's share.

*Mr. Linton Satterthwaite,* for the respondent.

*Mr. Aaron V. Dawes,* for the appellants.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Backes.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, BERGEN, MINTURN, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR—10.

*For reversal*—None.