ZACK MILLER, PETITIONER-RESPONDENT, v. NATIONAL CHAIR CO., DEFENDANT-PROSECUTOR.

Submitted May 6, 1941—Decided November 28, 1941.

Before Brogan, Chief Justice, and Justices Case and Heher.

For the prosecutor, *George E. Meredith.*

For the respondent, *David Roskein* (*Harry Cohn,* of counsel).

The opinion of the court was delivered by

HEHER, J. Petitioner suffered injury by an accident which arose out of and in the course of his employment; and the Workmen's Compensation Bureau made an award of compensation against the defendant corporation under *R. S.* 1937, 34:15-7, *et seq.*, notwithstanding that petitioner had previously entered into an agreement with the Federal Furniture Company, a corporation organized under the laws of the State of North Carolina, as his employer, for the payment of compensation under the laws of that state, "at the rate of $18 per week, payable weekly, beginning from 7-1-38, * * * until this agreement has been terminated by final receipt or supplemental agreement approved by the North Carolina Industrial Commission or by the order of such Commission." The agreement was "approved" by the tribunal last-named under a provision of the North Carolina statute that "otherwise such agreement shall be voidable by the employee or his dependents," and, if so approved, "the memorandum shall for all purposes be enforceable by the court's decree as hereinafter specified." *Chapter* 120 *of Public Laws of North Carolina,* 1929, *p.* 139. The mishap occurred on June 24th, 1938, at the plant of the Furniture Company in Elkin, North Carolina. Compensation for sixteen weeks, at the stated weekly rate, was paid under the agreement. When petitioner, a resident of New Jersey, declined to enter a hospital in North Carolina for an "operation" and "necessary medical attention," at the direction of the state Industrial Commission, payments were discontinued. Thereupon, this proceeding was instituted. The defendant sued out the writ.

A basic question litigated was whether petitioner and defendant had entered into a contract of employment in the State of New Jersey, where they had a common residence (and where defendant also maintained its plant and place of business), and whether this stipulation, if such there was, still subsisted at the time petitioner suffered his injury and the accident arose out of the service rendered pursuant thereto.

And defendant contends further that, even though these issues be resolved in the affirmative, petitioner cannot prevail

for the following reasons: That the North Carolina Industrial Commission "had previously acquired jurisdiction," and therefore the judgment under review is *coram non judice;* that the filing of the agreement adverted to with the Industrial Commission is "comparable to a petition for compensation under our act," and so the employee, "by his own act and under a valid law, submitted himself to the jurisdiction" of that body, and thereby our Compensation Bureau "was deprived of jurisdiction in the matter;" that the employee is precluded from a recovery under our statute "on the grounds of estoppel, election of remedies and *res adjudicata,*" in that he "had a live remedy under the laws" of North Carolina, and, conceding "a choice of remedies," he "has made that choice," and by filing "a petition or agreement for compensation" in the foreign jurisdiction, "he elected his remedy and is bound by it," and is "estopped from pursuing a further remedy in another tribunal;" and that the "petition or agreement was adjudicated by the subsequent acts" of the Industrial Commission "whereby it approved the agreement and ordered subsequent payments for compensation, traveling expenses and medical bills for treatment." These points are all untenable.

Ours is an elective system of compensation, contractual in nature; and if, as found by the Deputy Commissioner, the then subsisting contract of service was made with defendant in this state, the rights of the parties in this behalf are governed by our Workmen's Compensation Act. By mere inaction, the parties to such a contract impliedly stipulate for the payment of compensation under article 2 of that enactment for the consequences of an accident of the statutory class, no matter where it may occur. *Sexton* v. *Newark District Telegraph Co.,* 84 *N. J. L.* 85; *Rounsaville* v. *Central Railroad Co.,* 87 *Id.* 371 (reversed on another ground, 90 *Id.* 176); *Foley* v. *Home Rubber Co.,* 89 *Id.* 474; *Burns* v. *Edison,* 92 *Id.* 288; *Steinmetz* v. *Snead & Co.,* 123 *Id.* 138; *Same Case,* 123 *Id.* 497; *affirmed,* 124 *Id.* 450; *affirmed, sub nom. Snead & Co.* v. *Steinmetz,* 311 *U. S.* 605; 61 *S. Ct.* 12; 85 *L. Ed.* 605; *A. L. I., Conflict of Laws,* § 398.

The adoption of that scheme of compensation does not of

necessity depend upon the mutual assent of the parties, for it enters by operation of law into every contract of hiring made within this state, unless there be an affirmative rejection of the plan for the alternative common-law liability for negligence as modified by the provisions of article 1 of the act. The agreement may be "express or implied." Failure of an express agreement or notice to the contrary raises the presumption that the parties "have accepted the provisions" of article 2, and "have agreed to be bound thereby." *R. S.* 1937, 34:15-7, 34:15-9. Thus it is that reality of consent is not an indispensable element, although it may exist in the individual case, for article 2 is applicable even though the parties did not know of the existence of the statute, or, knowing, did not in fact have it in view. It has been said that, since the liability for compensation is not founded on "an express agreement between the parties," but rather one "implied by the law," it is *quasi*-contractual in nature. *American Radiator Co.* v. *Rogge,* 86 *N. J. L.* 436; *affirmed,* 87 *Id.* 314; error dism., 245 *U. S.* 630; 38 *S. Ct.* 63; 62 *L. Ed.* 520.

The declared policy of article 2 is to preclude any other recovery or measure of compensation in cases ruled by its terms. It is ordained that "Such agreement" shall constitute "a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination thereof than as provided" therein, and that "No. agreement, composition or release of damages made before the happening of any accident, except the agreement defined in section 34:15-7" of that article "shall be valid or shall bar a claim for damages for the injury resulting therefrom, and any such agreement is declared to be against public policy." *R. S.* 1937, 34:15-8, 34:15-39. The legislative design plainly was to provide, in respect of contracts of hire made under the circumstances here presented, "not only for employees a remedy which is both expeditious and independent of proof of fault, but also for employees a liability which is limited and determinate." *Bradford Electric Light Co.* v. *Clapper,* 286 *U. S.* 145; 52 *S. Ct.* 571; 76 *L. Ed.* 1026.

It is the undoubted function of the state to decree the

legal consequences that shall attach to such a contract made within its borders, without regard to the stipulation of the parties themselves. The common interest vindicates the incidental restraint upon the liberty of contract. *P. Bronstein & Co., Inc.,* v. *Hoffman,* 117 *N. J. L.* 500. It is empowered "through its own tribunals to grant compensation to local employees, locally employed, for injuries received outside its borders; * * * and likewise has power to exclude from its own courts proceedings for any other form of relief for such injuries. * * * The mere recognition by the courts of one state that parties by their conduct have subjected themselves to certain obligations arising under the law of another state is not to be deemed an extra-territorial application of the law of the state creating the obligation." *Bradford Electric Light Co.* v. *Clapper, supra.*

Even a purely compulsory system of compensation, adopted in the exercise of the police power, is so far an essential term of the contract of employment as to govern the legal consequences of an industrial accident suffered by the employee beyond the state's boundaries. The "terms," "obligations," and "sanctions" of a contract "are subject, in some measure, to the legislative control of the state" wherein it came into being, even though it is to be performed elsewhere. Such compensation liability "is imposed as an incident of the employment relationship, as a cost to be borne by the business enterprise, rather than as an attempt to extend redress for the wrongful act of the employer. * * * As the state had the power to impose the liability in pursuance of state policy, it was a rational, and therefore a permissible, exercise of state power to prohibit any contract in evasion of it." *Alaska Packers Association* v. *Industrial Accident Commission,* 294 *U. S.* 532; 55 *S. Ct.* 518; 79 *L. Ed.* 1044. And full faith and credit is enjoined by the Federal Constitution (*article IV, section* 1) in respect of public acts within the legislative jurisdiction of the enacting state. *Bradford Electric Light Co.* v. *Clapper, supra.* Only where there is a superior conflicting governmental interest of the sister state does this constitutional principle yield. *Alaska Packers Association* v. *Industrial Accident Commission, supra.*

Thus it is that, by such contract of service as enlarged by article 2 of our statute, the parties bind themselves to the payment of compensation as therein laid down for disability ensuing from an industrial accident occurring beyond the state's boundaries.

And, on the hypothesis that the contract of service was entered into within this state, there was no election of remedies in the legal sense. The parties merely joined in an agreement for the payment of compensation, at the stipulated weekly rate, for an indefinite period. There was no provision whatever for compensation for permanent incapacity. The fact that the stipulation was filed with and approved by the bureau set up by North Carolina for the administration of its compensation law is of no significance, for, as stated, the parties are not at liberty in the making of a contract of hire to modify the essential provisions of article 2, nor are they privileged to contract out of the statute after the accident. *P. Bronstein & Co., Inc.,* v. *Hoffman, supra.* See, also, *Sweet* v. *Austin Co.,* 12 *N. J. Mis. R.* 381.

The current of authority now is that an award under the Workmen's Compensation Act of one state will not bar a proceeding under "an applicable act" of another state. *Vide A. L. I., Conflict of Laws,* § 403.

And, by the same reasoning, the doctrine of *res judicata* has no application. The matter thus pleaded in bar does not constitute a final judgment of a court of competent jurisdiction conclusive of the issues herein raised. The North Carolina Commission's approving function, as here exercised, was essentially administrative and not judicial.

Nor is there estoppel *in pais* in the circumstances. Assuming without deciding that such would constitute a bar to the enforcement of this statutorily secured right of action, it is not suggested that repudiation of the position thus taken by the employee would work injustice to the defendant. *New Jersey Suburban Water Co.* v. *Harrison,* 122 *N. J. L.* 189.

Thus we are brought to a consideration of the question of whether the evidence sustains the finding of the Deputy Commissioner that the parties entered into the particular employment within this state.

Defendant maintains *in limine* that petitioner was "originally hired" in the Borough of Brooklyn, in the State of New York, and that "when the New Jersey corporation was set up under the same name," he "continued his employment without interruption," and therefore the pre-existing contract continued in force. But the original hiring was by the New York corporation of the same name, which was dissolved and its Brooklyn plant abandoned when the defendant corporation was organized under the laws of this state and its plant established here. Moreover, petitioner's salary was increased during the course of his employment by the defendant in this state; and thus a new contract came into being. Defendant labors under the misapprehension that such constituted "merely a continuation of the old contract which originated in New York." *American Radiator Co.* v. *Rogge, supra.*

The further point is made that the proofs reveal that petitioner, at the time he suffered the injury, was an employee of the Federal Furniture Company, and had severed his employment with defendant. The Deputy Commissioner resolved this issue in the negative; and we concur in the finding.

Petitioner's work for defendant was the maintenance of its machinery. In November, 1937, he was sent to Elkin by the corporation's president to set up a "new plant" there. He remained in that city two or three days. From January, 1938, until the accident happened, petitioner was in Elkin "three weeks out of four," setting up the equipment. The fourth week was devoted to work at defendant's factory in Rahway, this state. He was still engaged in installing machinery at the Elkin plant when the accident happened. The business of the latter was transacted at the defendant's offices in Rahway until the incorporation of the Federal Furniture Company on March 25th, 1938. The equipment purchased for the Elkin plant was charged to the defendant corporation.

The Commissioner found that defendant paid petitioner his weekly salary "as late as July 14th, 1938." This finding is not seriously challenged. Indeed, defendant's "weekly payroll record" discloses these weekly payments of salary by

defendant to petitioner until July 15th, 1938, when he was paid two weeks' salary in advance; and there were introduced in evidence canceled checks for these amounts (less deductions for Federal Old Age Pensions and State Unemployment Insurance), made by defendant to petitioner, the last dated July 15th, 1938. True, the Furniture Company made a check to petitioner on July 1st, 1938, for $185. But this was after the happening of the accident; and petitioner testified that it was given in payment of hotel and traveling expenses. That was the only disbursement made by that corporation to petitioner; and, in view of the cited payments, the inference that this also was in payment of salary would be utterly unreasonable. And the fact that the petitioner was one of the incorporators of the Furniture Company is of no significance in the circumstances. These corporations were closely allied. The president and principal stockholder of each was one Schachter, petitioner's brother-in-law; and the evidence establishes that this was merely a nominal relationship entered into at Schachter's suggestion without any change whatever in petitioner's contractual relations with the defendant corporation. He had no financial interest in the Furniture Company. Schachter died in an automobile accident not long after petitioner was injured, and so his testimony was lost to the parties.

While tending to sustain a contrary inference, petitioner's agreement with the last-named company for the making of compensation under the laws of North Carolina is by no means conclusive. It was tendered by that company's insurance carrier; and he signed it, so he said, without examining the contents. But however that may be, we are convinced that when he signed it, he was unmindful of its implications. This alone does not outweigh the cogent evidence of conduct indicative of a continuance of petitioner's employment with defendant corporation.

We deem it unnecessary to labor the point. The Deputy Commissioner's conclusions set forth other facts and circumstances pointing in this direction. In fine, it is evident that, at Schachter's order, petitioner rendered part-time service at the plant of the Furniture Company, but he remained

throughout the exclusive employee of the defendant corporation. The evidence does not reasonably lend itself to the inference that in the transaction in which the injury was sustained petitioner was the Furniture Company's servant rather than defendant's, *pro hac vice* or otherwise. Compare *Jackson* v. *Erie Railroad Co.*, 86 *N. J. L.* 550.

Lastly, certain rulings on evidence are assigned for error. The Deputy Commissioner admitted what purports to be a copy of "first notice of accident" forwarded by defendant to the Compensation Bureau, in which defendant was stated to be the petitioner's employer at the time of the accident; and it is said that a copy was inadmissible under the circumstances, and that, at all events, its use as evidence against the defendant is barred by *R. S.* 1937, 34:15-99.

This statutory prohibition is plainly not applicable. It provides that such report shall not be evidential against the employer "in any suit or action at law brought by an employee for the recovery of damages." A proceeding to recover compensation under article 2 is not within that category.

The paper was found in defendant's files, and it was shown to have been prepared by one of defendant's servants. Thus it would seem to be admissible as a declaration against interest. But it is unnecessary to determine the point. Defendant was not thereby prejudiced. The Deputy Commissioner apparently did not consider it in reaching his conclusions; and we find that, for reasons which need not be set out, its integrity is open to serious question and so it is not persuasive on the issue of employment. *Vide R. S.* 1937, 34:15-56; *Helminsky* v. *Ford Motor Co.*, 111 *N. J. L.* 369.

And there was no error in the exclusion of certain letters and papers having reference to purchases of material by petitioner on behalf of the North Carolina corporation. They seem to have been excluded on the ground that they were not properly proved, but it is evident that they have no probative value, and were clearly inadmissible on this ground.

We have no occasion to determine whether the defendant employer is entitled to credit for the compensation payments made to the employee. The question is not raised. There is authority for the view that, while generally an award had

under the compensation act "of another state will not bar a proceding under an applicable act," the "amount paid on a prior award in another state will be credited on the second award." *A. L. I., Conflict of Laws,* § 403.

Judgment affirmed, with costs.