43 N.J. Super. 48 (1956)
127 A.2d 580
ROBERT BOWERS, PETITIONER-APPELLANT,
v.
AMERICAN BRIDGE CO., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 22, 1956.
Decided December 4, 1956.
*51 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Harry Lane, Jr., argued the cause for petitioner-appellant.
Mr. Burtis W. Horner argued the cause for respondent-respondent (Messrs. Stryker, Tams & Horner, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
In this workmen's compensation case the principal problems are two: (1) the place of contract and (2) the effect in New Jersey of an earlier Pennsylvania compensation award as res adjudicata within the full faith and credit clause of the United States Constitution, Art. IV, Sec. 1. The petitioner sustained two accidental injuries while at work for respondent at Morrisville, Pa. He recovered awards for temporary and permanent disability on account of each before the Division of Workmen's Compensation but these were reversed by the Mercer County Court on the finding by that tribunal that the agreement of employment was made in Pennsylvania, not New Jersey.

I.
Petitioner testified at the hearing in the Division that about July 10, 1951, while employed as an iron worker on the New Jersey Turnpike construction and living in a house trailer in Camden (he moves about in his trailer from job to job), he received a call from the Iron Workers Union Local 68 in Trenton to attend at its office there in reference to employment; that he went there about 8:00 A.M. one day and met one "Sailor" Davis, assistant business agent of the union, who informed him that there was work for him with the respondent at Morrisville, Pa., as member of *52 a five-man crew to operate a rig for unloading steel; that he "knew * * * at the hall at Trenton" what wage he was to receive; that he and the other members of the assembled crew, all of whom, with one exception, he was able to name, left for Morrisville at 8:30 A.M. and arrived on the job at 9:00 A.M.; and that he went to work at once, being paid for a full eight-hour day although regular working hours were 8:00 A.M. to 4:30 P.M. with half an hour off for lunch. When he arrived at the job, so he said, he was given a temporary badge and safety hat and later in the day, while working, he signed a payroll card. He gave a Langhorne, Pa. address, having been told there was a trailer camp there at which he could stay. He was living at the camp when he sustained the injuries here involved.
Petitioner testified that he has been an iron worker eleven years and that among his prior employments were a number of jobs with the present respondent. He said that the regular procedure for the hiring of ironworkers was through the contractor calling the local union business agent and that union members seeking employment are required by the union to apply at the union hall and are forbidden to apply directly to the employer. This is not controverted by respondent.
On August 30, 1952 petitioner was struck in the chest by a swinging load of steel and his consequent injuries kept him out of work until October 20, 1952. Toward the end of November 1952 he sustained an injury to his left leg when he stepped into a hole. It was for these mishaps that the awards here in question were allowed.
Respondent offered proofs designed to establish that its hiring of the petitioner took place when he arrived on the job at Morrisville, not before. The question was crucial, since, in these circumstances, the making of a contract of employment in New Jersey was essential to found jurisdiction in the New Jersey Division of Workmen's Compensation. Gotkin v. Weinberg, 2 N.J. 305 (1949). Respondent produced its safety engineer, McFarland, and its assistant to the project manager, Maxwell, to testify concerning the *53 procedure for hiring men at Morrisville as of July 1951. Neither of them was specifically familiar with the hiring of petitioner. The purport of this proof was that the nine superintendents on the project would congregate early each morning in company with the union stewards and decide how many additional men were needed that day; that the stewards were advised accordingly and required to obtain the men through the business agent of the union; that the union (Local No. 68 in Trenton) set up a hiring hall in Morrisville to handle employment for this project (Fairless Works of United States Steel Corporation) because of its size and that it was there that workers were recruited for the job by the stewards. Superintendent Grimes testified that the stewards were authorized "to bring in what [workers] we required."
The most significant testimony on this subject was given by Henry Gill, union steward at the time of petitioner's hiring and the only one of respondent's witnesses who remembered Bowers particularly. He testified:
"Q. Do you recall seeing Mr. Bowers in 1951, in July, or while you were engaged as a steward? A. Yes.
Q. Will you describe the way you met Mr. Bowers and what you did after you saw him? A. The only way I could describe that is, I had him in my steward's book. I know he was there and I collected assessments off him.
Q. Did you bring Mr. Bowers through the gate? A. That's right.
Q. Did you examine his book? A. Not me alone. The business agent examined the books. I'm only the steward. I bring them in."
On cross-examination Gill testified that after serving as a steward he "then became a regular employee of" the respondent and has been with it ever since. He also testified, concerning the men he brought through "the gate," that "the business agent had arranged for them to be there"; further:
"Q. They came from Local 68, didn't they? A. Come from all locals.
Q. Some from Local 68, some from other locals? A. That's right.
Q. Local 68 is in Trenton, isn't it? A. That's right.
*54 Q. Saylor Davis at that time was working as  handling the business agent duties at Trenton? A. Not at that time. Trenton, yes. Hanford was the business secretary; he's the recording secretary. * * *
Q. When men were needed, a call would be made to Saylor Davis to send over the number of men that would be needed. A. All the Trenton men had the preference. He'd call in for the Trenton men first."
The Trenton men had preference in hiring. The union dues collected from "men that came from Trenton would be paid to the Trenton local." Assessments of dues collected by Gill from petitioner on the job were paid to the Trenton Local No. 68.
It will be discerned from the synthesis of the respondent's proofs outlined above that although it produced all of its personnel who apparently could have had anything to do with the hiring of workers for the Morrisville project in July 1951, none of them were asked directly whether any communications were had on its behalf with Mr. Davis or anyone else at the Trenton office of Local No. 68 for workers at or about the time petitioner claims to have been recruited for its labor pool through that medium. Notwithstanding certain weaknesses as to credibility on the part of the petitioner in respect to details of events after arriving on the job, his testimony as to how he happened to go to work for respondent stands unrefuted by defense proofs, and the admissions of Gill give it circumstantial sustenance. The details established concerning respondent's general procedure in hiring at Morrisville do not refute the truth of petitioner's account of his own particular hiring. Indeed the finding by the deputy director in accord therewith was not discarded by the County Court. The reversal there was solely on the grounds that "petitioner has failed to prove the agency of Sailor Davis" and that "respondent has established that the hiring was not perfected until the conclusion of the administrative details in Pennsylvania." These are legal rather than factual conclusions. We are entirely satisfied that on *55 the record before us petitioner's story as to what transpired before he arrived at Morrisville accords with the probabilities and should be accepted as fact. Jochim v. Montrose Chemical Co., 3 N.J. 5 (1949). We consequently proceed to a consideration of the soundness of the conclusions of the County Court.
The adversion by the County Court to a failure of proof of the "agency of Sailor Davis" overlooks the fact that the pertinent question in this regard is the agency of the union local to supply the respondent with workers. As to this the testimony of both the petitioner and steward Gill fully establishes the special agency relationship between the union local and the respondent. The powers of an agent may be disclosed by proof of his engagement in previous transactions of a similar nature with others with the knowledge, permission and acquiescence or recognition of his principal. Gabriel v. Auf Der Heide-Aragona, Inc., 14 N.J. Super. 558, 569 (App. Div. 1951); Smith v. Delaware & Atlantic Telegraph & Telephone Co., 64 N.J. Eq. 770, 772 (E. & A. 1902). Here the respondent had, as is apparently customary in the industry, made the union local its agent to recruit ironworkers for Morrisville. There is no dispute that Mr. Davis was acting business agent of Local No. 68 in Trenton at the time petitioner was engaged. Whether or not respondent in other cases dealt with other officials of the same union, there is nothing shown to derogate from Davis' authority as an appropriate union official for that purpose to execute on its behalf its agency function to supply respondent with the specific crew inclusive of petitioner which was assembled in Trenton and proceeded forthwith to go to work for it at Morrisville.
Agency apart, the acceptance by petitioner in Trenton of the employment opportunity offered him so as to fix the situs of contract in New Jersey is adequately established by his action in signifying his assent to the proposal at the union hall in Trenton and in proceeding at once to Morrisville. Gomez v. Federal Stevedoring Co., Inc., 5 N.J. Super. 100 (App. Div. 1949); and see Grogan v. Scully, Inc., 42 *56 N.J. Super. 174 (App. Div. 1956). Conduct may efficiently manifest contractual assent. 1 Williston on Contracts (rev. ed. 1936), § 22A, p. 43. It did here.
If, as we have concluded was here the case, the contract of employment was in essence consummated by petitioner's acceptance of the respondent's offer in New Jersey, the fact that incidental administrative details were performed in reference thereto in Pennsylvania is immaterial so far as contractual situs is concerned. See Hi-Heat Gas Co. v. Dickerson, 12 N.J. Misc. 151, 152, 153 (Sup. Ct. 1934), affirmed 113 N.J.L. 329 (E. & A. 1934); cf. Johnson v. Great Lakes Pipe Line Co., 358 Mo. 445, 215 S.W.2d 460, 463, 464 (Sup. Ct. 1948). To suppose otherwise would be to permit formalities to govern substance. The County Court consequently erred in this respect, too.
Respondent advances the alternative position that petitioner's first employment terminated in December 1951 and that a new hiring at Morrisville took place December 31, 1951, which, being the last engagement antecedent to the accidents in question, grounds the legally relevant employment contract in a Pennsylvania situs. Petitioner was off the job for several weeks in December 1951, returning "after Christmas." He testified he was granted a "leave of absence" to visit his sick mother in Alabama by Slim Dickinson, superintendent of respondent. Dickinson was not produced by respondent to refute this. Respondent's sole reliance is upon petitioner's signature of a second employment card as of December 31, 1951. There was received in evidence, over petitioner's objection, only a photostatic copy of one side of the card, although it is admitted there was relevant data on the reverse side. The failure to produce the original card was explained only on the basis that it was "not available." Petitioner urges it may well have had a notation as to the leave of absence. Not being a complete copy of the original, the admissibility of the photostat is at least dubious. Hall & Co. v. Collingham, 74 N.J.L. 211, 212 (Sup. Ct. 1906).
But in any event the evidence was that a new card is always required under respondent's records system when *57 a man goes off the payroll over a week. It is significant of a continuation of the employment relationship that petitioner retained his original badge after returning to the job. Respondent's payroll clerk testified that the practice was for a former employee who returned after a prior termination of employment to receive a new badge number and its safety engineer testified that as long as a man was employed he retained the same badge number. There was also proof that office practice required that a new card be filled out even after a leave of absence. The deputy director found that this episode did not interrupt the employment. The County Court made no finding as to this question. We are satisfied that the proofs do not establish a termination of the hiring; that they do indicate a return to work, not a reemployment, after a leave of absence. "Leave of absence" connotes continuity of the employment status. Diehl v. Lehigh Valley R. Co., 211 F.2d 95, 99 (3 Cir. 1954); State ex rel. Cutright v. Akron Civil Service Commission, 95 Ohio App. 385, 120 N.E.2d 127, 130 (Ct. App. 1953); cf. Ward v. Keenan, 3 N.J. 298, 311 (1949). We conclude petitioner was still in his original employment, consummated in New Jersey, when the accidents giving rise to these claims befell him and that the New Jersey Division of Workmen's Compensation therefore had jurisdiction.

II.
We thus come to the last and most complex phase of the appeal: the plea by respondent of res adjudicata based upon an alleged determination of compensation by the Workmen's Compensation Board of the Department of Labor and Industry of the Commonwealth of Pennsylvania. Since the Pennsylvania award was only with respect to the August 1952 accident, it is only the New Jersey award concerning that event, and not that for the November 1952 injury, which is brought into question by this contention. A comprehension of the problem requires inspection of the compensation proceedings had in both states.
*58 On or about September 7, 1952 the respondent began voluntarily to make compensation payments to the petitioner pursuant to Pennsylvania law at the rate of $30 per week, and on September 23, 1952 it procured his signature to a form prescribed by the Pennsylvania authorities entitled "Agreement for Compensation for Disability or Permanent Injury," which recited the date and details of the accident and provided that the employer would "pay to the said employe compensation at the rate of $30 per week, beginning 9/7/52 * * * and medical and hospital expenses, subject to the limits of time and amount provided by the Pennsylvania Workmen's Compensation Act and subject to modification or termination by Supplemental Agreement, Order of the Workmen's Compensation Board or Final Receipt." On October 23, 1952 petitioner signed what is described as a "Final Settlement Receipt" in which he acknowledged receipt of a check for $34.29, "being the final payment of compensation due me under the Pennsylvania Workmen's Compensation Act for all injuries received by me on or about August 30, 1952 * * * making with the payments heretofore received by me the total sum of $184.29 covering a period of 6-1/7 weeks * * *."
On September 23, 1953 respondent filed with the Pennsylvania compensation board a document captioned "Petition for Termination or Modification of Agreement or Award on Ground of Changed Liability," which referred to the accident in question and the "Agreement" and, in effect, prayed that the board "terminate" the agreement on the ground that the employee had returned to work on October 23, 1952, "at which time all disability as a result of his accident of August 30, 1952 had ceased and terminated." Service of this petition on the employee was not proven at the hearing but it was established that the legal requirement and practice is for the Pennsylvania agency to mail a copy to the employee together with forms for an answer. Petitioner conceded that he had received "a paper of some kind from the Compensation Laws in Pennsylvania * * * to sign and send in if I wanted a hearing in Pennsylvania." *59 He could not identify the form in question as "the paper" he received. He said he paid no attention to it because he had previously filed his petition for compensation in New Jersey. For purposes of this determination we assume that petitioner did receive a copy of the Pennsylvania petition.
On January 20, 1954 a referee of the Pennsylvania board entered written "findings" setting forth that "before holding a hearing the above matter was adjusted by the claimant executing a final receipt" and reciting its terms, and, finally, reciting that "the termination petition is granted as of October 19, 1952 in accordance with the said final receipt." These "findings" are set forth on a form captioned "Referee's Award or Disallowance of Compensation." It does not appear that any hearing was held or evidence adduced in support of this action other than the "Final Settlement Receipt." Under Pennsylvania law such an award is final and conclusive, if not appealed, subject only to reconsideration upon petition filed within a year on a showing of change of disability.
It becomes important to note, however, that under Pennsylvania law, unlike that of New Jersey, there is no lumpsum compensation allowable for permanent disability, partial or total, except in case of loss of a specific member such as an eye or an extremity; recovery is only for weeks either of "total disability," to a maximum of 700 weeks, or of "partial disability," to a maximum of 300 weeks, Purdon's Pa. Stat. Annot., Tit. 77, §§ 511, 512. Where there are periods of successive temporary and total disability, or vice versa, the maximum for either class of disability is reducible by the number of weeks for which compensation has been paid for the other. Ibidem. A Pennsylvania legal expert described the compensation law of that state as based upon "a wage loss concept." The contrast between the recoveries respectively allowable by the laws of Pennsylvania and New Jersey is further pointed up by the fact that in New Jersey, in case of permanent disability not ascertained to be such until after a course of treatment and observation, recovery is to be had both for the permanent disability at the statutory *60 rate and for temporary disability during the period prior to the establishment of the fact of permanent disability. Reynolds v. Passaic Valley Sewerage Commissioners, 130 N.J.L. 437 (Sup. Ct. 1943), affirmed 131 N.J.L. 327 (E. & A. 1944).
On October 9, 1953 petitioner filed his New Jersey petition for compensation on account of the August 1952 accident. The determination of the Division of Workmen's Compensation was that petitioner suffered a period of temporary disability attributable to the accident of seven weeks, compensable at the rate of $30 per week, or $210, with credit to the respondent for the $184.29 previously paid as aforesaid; that he suffered "a permanent disability both orthopedic and neurological in nature equivalent to 20% of total * * * entitling him to compensation for 110 weeks at $30.00 per week or $3,300 * * *."
So it appears that respondent's contention is that a Pennsylvania award of $184.29 for temporary disability, entered under the circumstances related, precludes a New Jersey award for $210 temporary disability and $3,300 permanent disability. Its reliance is upon Buccheri v. Montgomery Ward & Co., 19 N.J. 594 (1955). In that case a New York resident employed in New York was injured in an automobile accident in New Jersey while on business for his employer. A month later he filed a claim for compensation with the New York Compensation Board, and, after hearing, at which only the employer appeared, a determination was made awarding the claimant compensation for four-fifths of a week. The award was not appealed and the time for appeal had expired. The employee had previously filed a third-party action in New Jersey. About a year after the New York award he filed a petition for compensation in New Jersey. The Supreme Court assumed, without deciding (19 N.J., at p. 598), that the New Jersey Division had jurisdiction based upon the occurrence of the accident in New Jersey notwithstanding the situs of contract was New York. Davidheiser v. Hay Foundry & Iron Works, 87 N.J.L. 688 (E. & A. 1915); see American Radiator Co. *61 v. Rogge, 86 N.J.L. 436 (Sup. Ct. 1914). The court went on to make a comprehensive analysis of the decisions of the United States Supreme Court in the field of application of the Full Faith and Credit Clause of the Federal Constitution and implementing legislation (28 U.S.C.A., § 1738) to workmen's compensation statutes and awards. It concluded that no holding of the federal Supreme Court required preclusion of the New Jersey award on the basis of the New York award, but that the language in Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943), reflected an underlying purpose of the Clause to assure the operation of the principle of res adjudicata, as between states, which required that conclusive effect be given the New York award unless the public policy of the New York law was "obnoxious" to that of New Jersey. Finally, finding that there was no such conflict in policy, it held that relief in New Jersey was barred by entry of the New York award. Three justices dissented, without opinion. The court did, however, recognize that the variety of fact situations in which this kind of problem may be manifested demands individualized treatment of each case. What is called for is an "interest weighing approach" (19 N.J., at page 602). The decision in Buccheri was represented as going "no further than the resolution of the specific problem here presented and we are deciding that and no more. We are writing for this case and this case alone" (19 N.J., at page 604).
Of particular significance for present purposes is the distinction in Buccheri of the decision in Miller v. National Chair Co., 127 N.J.L. 414 (Sup. Ct. 1941), affirmed 129 N.J.L. 98 (E. & A. 1942), as a case where the employment was entered into in New Jersey (the injury occurred in North Carolina). There the employee and employer entered into an agreement for weekly compensation in North Carolina subject to stipulations very much like the Pennsylvania agreement involved in the present case, and the agreement was subsequently approved by the North Carolina compensation board under a statute which made the award *62 enforceable by decree of court. Nevertheless the New Jersey Compensation Bureau subsequently made an award under the laws of this State. Writing for the former Supreme Court, Mr. Justice Heher held untenable the argument that principles of estoppel, election of remedies and res adjudicata proscribed the entertainment of jurisdiction by New Jersey after entry of the North Carolina award. He emphasized that New Jersey's statutory policy made mandatory the application of New Jersey's compensation remedies in favor of an injured workman in case of an employment contract made in this State and forbade any agreements by the parties after an accident in contravention of that policy (127 N.J.L., at page 420). As to election of remedies, it was pointed out that in the agreement (as in the case sub judice) there "was no provision whatever for compensation for permanent incapacity" (ibid.). The court dismissed the contention of res adjudicata on the ground that the North Carolina's "approving function, as here exercised, was essentially administrative and not judicial" (ibid.). As we shall develop infra, the Pennsylvania proceedings which concern us here are hardly more judicial in nature gauged by New Jersey standards of policy in this area.
In view of the basis for distinction of the Miller case in Buccheri we might well dispose of the present point on the basis that Buccheri, in approving Miller, implies the view that the state of employment situs has an absolute right to make its compensation remedies available entirely without regard to any award in the state of injury, except to credit the amount paid under the first award. But we think it preferable that we follow the approach in Buccheri of determining, first, whether the rule of the United States Supreme Court which emerges from the Magnolia Petroleum Co. case, supra, and Industrial Commission of Wisconsin v. McCartin, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140 (1947), taken together, commands the application of full faith and credit in bar of the New Jersey award, and, if it does not, whether the general philosophy of the constitutional provision and ordinary principles of res adjudicata nevertheless *63 impel the same result, in the light of considerations pertinent under New Jersey public policy in workmen's compensation.
In the Magnolia Petroleum Co. case, supra, a workman employed in Louisiana and injured in Texas sought and procured in Texas a compensation award for 75 weeks of total disability and 125 weeks of partial. He then instituted a Louisiana proceeding for the more liberal compensation allowances available there and was successful, the Texas payments being credited. By a vote of 5-4, the Supreme Court set aside this result, holding that by Texas law the award there was the final and exclusive adjudication of the compensation liability, entitled to full faith and credit in Louisiana, and, by application of res adjudicata, effective to preclude in the state of contract situs what was called "a second or a greater recovery" for a "single cause of action" (320 U.S., at page 440, 64 S.Ct., at page 214). The court distinguished from the problem of recognition of foreign state compensation judgments that of application of foreign compensation law where the state of the forum has significant contacts with the employment relationship or the injury; in the latter case the state of the forum is permitted to assume jurisdiction and effectuate its own policy without having to accord full faith and credit to the less beneficent laws of another state although the latter also has relevant interests in the subject matter. The conceptual criterion in that situation is due process rather than full faith and credit. Alaska Packers Association v. Industrial Accident Commission, 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935); Pacific Employers Insurance Co. v. Industrial Accident Commission, 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940 (1939); but see Bradford Electric Light Co. v. Clapper, 286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026 (1932); cf. Carroll v. Lanza, 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183 (1955); Stacy v. Greenberg, 9 N.J. 390, 398, 399 (1952).
The result in Magnolia Petroleum Co. was contrary to the Restatement, Conflict of Laws, sec. 403, and was widely criticized as ignoring the realities and the difficulties confronting *64 a necessitous workman injured away from his home state and readily subject to disadvantageous maneuvering by an employer; e.g., Note, 56 Yale L.J. 562 (1947); Freund, "Chief Justice Stone and the Conflict of Laws," 59 Harv. L. Rev. 1210, 1227 et seq. (1946); Cheatham, "Res Adjudicata and the Full Faith and Credit Clause: Magnolia Petroleum Co. v. Hunt," 44 Col. L. Rev. 330, 343 (1944).
So far as concerns the case before us, the effect of Magnolia Petroleum Co. was substantially minimized when the Supreme Court, only four years later, in Industrial Commission v. McCartin, supra, decided that a prior compensation award in the state of contract would not under full faith and credit preclude a subsequent award by the state of injury (giving credit for payment under the first award), where an examination of the statutes and judicial decisions of the state of first award did not indicate "by unmistakable language" an intent to make a compensation award the exclusive remedy of the injured workmen not only in that state but elsewhere. Such intent was not found by the court in the Illinois law and the subsequent award in Wisconsin was sustained. The ruling was by a unanimous court. The broad scope of this determination is reflected by the fact that the court noted that the Illinois compensation act defines the term "employee" as including persons "`whose employment is outside the State of Illinois where the contract of hire is made within the State of Illinois,'" and, further, that the act provides that: "`No common law or statutory right to recover damages for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, shall be available to any employee who is covered by the provisions of this act.'" [330 U.S. 622, 67 S.Ct. 889.]
The McCartin case has been generally interpreted as in effect overruling Magnolia Petroleum Co., since the general exclusive coverage clause of the Texas statute involved in the latter case was not significantly more indicative of an intent to preclude remedies in other states than the Illinois statute in the former. 2 Larson's Workmen's Compensation *65 Law, § 85, pp. 358-364; Horovitz, "Workmen's Compensation Law," 16 NACCA L.J. 38, 52, 54-56 (1955). It is now the generally accepted view that unless the statute or decisions of the state of first award expressly disallow a later award in another state which has an adequate interest in the subject matter such an award may be made if credit is given for payments on the first award. Ibid; Buccheri v. Montgomery Ward & Co., supra (19 N.J., at page 604); cf. Carroll v. Lanza, supra (349 U.S., at page 411, 75 S.Ct., at page 806); see Restatement, Conflict of Laws, sec. 403, as amended in 1948. Accord: Cook v. Minneapolis Bridge Construction Co., 231 Minn. 433, 43 N.W.2d 792 (Sup. Ct. 1950); Cline v. Byrne Doors, Inc., 324 Mich. 540, 37 N.W.2d 630, 8 A.L.R.2d 617 (Sup. Ct. 1949); contra: Gasch v. Britton, 92 U.S. App. D.C. 64, 202 F.2d 356 (D.C. Cir. 1953); and see Bolton v. O'Connor, 114 F. Supp. 273 (D.C. Miss. 1953). Contrast the approach to the Magnolia Petroleum Co. and McCartin cases in Hogan, "Constitutional Implications of Workmen's Compensation and Choice of Law," 7 Hastings L.J. 268, 283 (1956).
Turning, then, to the Pennsylvania compensation act to see whether it expressly excludes a right of recovery by an injured workman under the laws of any other state, we find that it does not. The elective operation of workmen's compensation liability is substantially the same in Pennsylvania as in New Jersey. Purdon, op. cit., supra, Tit. 77, § 461. Acceptance of the provisions of the act operates "as a surrender by the parties thereto of their rights to any form or amount of compensation or damages for any injury or death occurring in the course of the employment, or to any method of determination thereof, other than as provided, in article three of this act. * * *" Ibid., § 481. This language does not meet the test of the McCartin case of expressly excluding a right of recovery of compensation in another state by "unmistakable language" and is not broader than the verbiage of the Illinois statute there held not to have such effect. We therefore conclude that the decisions of the United States Supreme Court do not *66 mandatorily effect preclusion of a New Jersey award by application of full faith and credit to the Pennsylvania award. It remains only, following the chart drawn in Buccheri, to consider whether the rule of res adjudicata should nevertheless apply to bar the New Jersey award, and this, in turn, calls for a consideration not only of the applicability of ordinary principles of conclusiveness of judgments but also as to whether what happened in Pennsylvania "is obnoxious to the policy of our act" (19 N.J., at page 605).
Addressing our attention first to the $3,300 award for permanent disability in the proceedings herein, it is clear that the Pennsylvania award is no bar since there is, as shown above, no compensation cause of action in that state for permanent disability of this kind and no award of this nature could have been made by the Pennsylvania board. In Pennsylvania, as elsewhere, res adjudicata applies to bar an action only where a previous action between the parties was effective to adjudicate all rights, regardless of whether they were in fact raised. See Maslo Mfg. Corp. v. Proctor Electric Co., 376 Pa. 553, 103 A.2d 743, 745 (Sup. Ct. 1954); cf. Goldstein v. Ahrens, 379 Pa. 330, 108 A.2d 693 (Sup. Ct. 1954). Petitioner's right to compensation for this kind of permanent disability was not justiciable in the Pennsylvania proceeding and for this reason the award there was not res adjudicata as to that element of the present recovery. Cf. New Amsterdam Casualty Co. v. Popovich, 18 N.J. 218, 225 (1955). In Cline v. Byrne Doors, Inc., supra, an award in the state of injury for medical care was held not preclusive of an award in the state of employment for disability, this being considered to be "for a different recovery" (37 N.W.2d, at page 635); and see Spietz v. Industrial Commission, 251 Wis. 168, 28 N.W.2d 354, 359 (Sup. Ct. 1947).
The stark contrast between the $184.29 allowed for this accident in Pennsylvania and the $3,510 awarded here of itself indicates, in the language of Buccheri, "that the award made in the other state is so much less than an award that *67 could be allowed here that it can be reasonably said that such an award is in conflict with the policy of our act as set out in the schedules therein and other relevant sections, and is obnoxious to the policy of our act" (19 N.J., at p. 605).
Finally, the manner in which the Pennsylvania award was permitted to be entered is so much less solicitous of adequate safeguards for the protection of the employee than the comparable requirements of our own statute that we are constrained to hold that the provisions of our sister state are not merely different, but are, indeed, so far divergent from our own statutory policy as to be obnoxious to it and thus to obviate our treating the award there as binding here, within Buccheri. See Rodes, "Workmen's Compensation," 11 Rutgers L. Rev. 140, 155, 156 (1956). The agreement of settlement in Pennsylvania reflected by the so-called "Final Settlement Receipt" does not appear to have had any approval by an official agency; certainly not in pursuance of a hearing and determination in open court in the presence of the petitioner, as would be required by our own statute to make an award upon such an agreement binding and conclusive. N.J.S.A. 34:15-22; R.S. 34:15-50; Nagy v. Ford Motor Co., 6 N.J. 341, 348 (1951); Ferraro v. Zurcher, 12 N.J. Super. 231, 235 (App. Div. 1951). The policy of a procedure for approval of a settlement implemented with safeguards to assure that the injured workman gets no less than his statutory due is integral to the philosophy that "the compensation act provides social insurance in the common interest as well as the interest of the injured workman," Nagy, supra (6 N.J., at p. 350); and this policy gains added emphasis when we are concerned, as here, with a workman whose hiring took place in this state at a time when he was living here. See Miller v. National Chair Co., supra (127 N.J.L., at pages 418, 419).
The same considerations of impolicy apply to the employer-initiated petition in Pennsylvania to have the settlement agreement adjudicated as final and conclusive by mere mailing of notice to petitioner and approval by *68 a referee without proof or presence of the petitioner. Not only is such a procedure absent from our own statute but it is wholly foreign to the spirit of our compensation law, even assuming that it is consonant with due process. It is an example of what the Yale Law Journal describes as the maneuvering of an employee "into an unfavorable position by a procedural device which enables the employer to initiate proceedings" (op. cit., supra, 56 Yale L.J., at p. 568). It is repugnant to New Jersey public policy and we therefore decline to recognize the award as conclusive even with respect to the amount of the allowance for temporary disability. The ruling in the Division adequately heeds respondent's rights in this respect by crediting it with the amount of the payment. Restatement, Conflict of Laws, sec. 403.
The judgment of the Mercer County Court is reversed and the determination and judgment in the Division of Workmen's Compensation is reinstated.