**INDUSTRIAL TRACK BUILDERS OF AMERICA, Appellant,**

v.

**Earnie LEMASTER and Workmen's Compensation Board, Appellees.**

Court of Appeals of Kentucky.

May 31, 1968.

Joseph C. O'Bryan, Louisville, for appellant.

Freeman B. Blackwell, Louisville, J. Keller Whitaker, Frankfort, for appellees.

PALMORE, Judge.

This is a workmen's compensation case involving a question which appears to be of first impression in this court.

The appellee, Earnie Lemaster, a resident of Jeffersonville, Indiana, was injured in Indiana while working for the appellant, Industrial Track Builders of America, a construction company located in Louisville, Kentucky. He had been hired in Louisville and his paychecks were issued there. However, the employer had construction projects in Indiana as well as in Kentucky, and Lemaster worked about 75% of the time in Indiana.

■ The injury occurred on September 14, 1964. On October 16, 1964, Lemaster signed an agreement with General Accident Fire and Life Assurance Corporation, Ltd., the employer's compensation carrier, to accept compensation at the rate of $42 per week until terminated in accordance with the Workmen's Compensation Law of Indiana. After receiving payments for 104 weeks totalling $4368 he filed claim with the Kentucky Workmen's Compensation Board. The jurisdictional point was raised by special answer, and after taking evidence directed to that issue the Board found that Lemaster had made an election to proceed under the Indiana act and had waived his rights under the Kentucky act. His claim was dismissed, and an appeal to the Jefferson Circuit Court resulted in a judgment reversing and remanding for further proceedings. The employer * now appeals to this court.

The agreement for compensation was executed on a standard printed form SF–4 with blanks filled in as appropriate, the name of the state being typewritten in a space left for that purpose. It was filed with and apparently approved by the Indiana Board on October 22, 1964, but was never filed with the Kentucky Board except as an exhibit in the instant proceeding.

* The employer, which had nothing to do with the compensation agreement, is mere-

KRS 342.045 provides as follows:

*"Injury out of state to person employed here.* Any employer who hires employees within this state to work in whole or in part without this state, may agree in writing with such employees to exempt from the operation of this chapter injuries received outside this state. In the absence of such an agreement, the remedies provided by this chapter shall be exclusive as regards injuries received outside this state and shall be upon the same terms and conditions as if the injuries were received within this state."

Immediately after the accident and until the agreement was executed a month later, if Lemaster's disability was compensable he had a valid claim under the compensation law of Kentucky and the Kentucky Board had jurisdiction of it. KRS 342.265 provides that if the employe and employer reach an agreement in regard to compensation it shall be filed with the Board and unless so filed and approved shall not operate as a final settlement. "The obvious policy and purpose of this law is to discourage the making of settlements except under the protective supervision of the Board." Kentucky Workmen's Compensation Board v. Haungs, Ky., 373 S.W.2d 724 (1964).

■ We do not know whether Lemaster would receive more or less compensation under the Indiana law. In either case the agreement signed on October 16, 1964, fixed the amount of money he would receive and was in settlement, temporary or otherwise, of a claim that existed under and by virtue of KRS Ch. 342. Hence the agreement was one which could not have a binding effect in this state unless and until filed with and approved by the Kentucky Board as required by KRS 342.265. The basic purpose and policy of the statute is to prevent an employe who has a claim under KRS Ch. 342 from signing it away without the approval of the Board.

ly a nominal party, the real party in interest being its insurer.

As the employer contends, KRS 342.045 does not expressly require that an agreement exempting injuries occurring outside this state from the operation of KRS Ch. 342 be filed with or approved by the Board, nor does it in so many words prevent the execution of such an agreement after the occurrence of a compensable injury. We need not explore the ramifications of these circumstances except as they affect the particular case at hand. What we hold here is simply that any agreement between employe and employer (or its insurer) with regard to an existing claim under KRS Ch. 342 is subject to the provisions of KRS 342.265. An agreement to waive the Kentucky claim and proceed under the law of some other jurisdiction, whether it be a sister state or Timbuctu, is no exception.

We do not reach the question of whether the agreement of October 16, 1964, actually would have amounted to an exemption agreement under KRS 342.045 had it been filed with and approved by the Kentucky Board.

The observation in Buckman v. Republic Structural Painting Corp., Ky., 302 S.W.2d 855 (1957), that "the mere fact that an employer and employe are subject to the workmen's compensation law of the state in which the contract of employment was made does not preclude the employe from seeking compensation under the workmen's compensation law of the state in which the injury occurs, if the employe and employer are in fact subject to the latter law," is not inconsistent with our adherence to the policy which protects the employe against an improvident waiver of vested rights under the law of this state by requiring approval of the Board.

The really serious problem in this case, which seems to have been overlooked in the arguments, is whether an award in one state precludes recovery in another under the full faith and credit clause of the U.S. Constitution, Art. IV, § 1. In Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149, 150 A.L.R. 413 (1943), it was held that an employe who had been hired in Louisiana, injured in Texas, and procured a final award in Texas could not recover a second and additional award in Louisiana for the same injury. Four years later, in Industrial Commission of Wisconsin v. McCartin, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140 (1947), the Supreme Court appears to have held that "a prior compensation award would not fall under the full faith and credit provisions so as to preclude a subsequent award by a sister state where an examination of the statute and judicial decisions of the state of the first award did not indicate 'by unmistakeable language' an intent to make the compensation award the exclusive remedy of the injured workman, not only in that state, but every other jurisdiction." Hudson v. Kingston Contracting Co., 58 N.J.Super. 455, 156 A.2d 491, 493 (1959). See 2 Larson's Workmen's Compensation Law § 85.30, p. 362.

"The McCartin case has been generally interpreted as in effect overruling Magnolia Petroleum Co. * * *. It is now the generally accepted view that unless the statute or decisions of the state of first award expressly disallow a later award in another state which has an adequate interest in the subject matter such an award may be made if credit is given for payments on the first award." Bowers v. American Bridge Co., 43 N.J.Super. 48, 127 A.2d 580, 589 (1956), aff'd 24 N.J. 390, 132 A.2d 28 (1957).

"The only state in which the *Magnolia* doctrine as limited by the *McCartin* case, might still literally apply is Maryland. * * * Several cases, both before and after McCartin, have held that a prior voluntary payment of compensation accepted by the employee under the laws of one state does not detract from the employee's statutory right to an award in another state, whether the agreement for compensation had received commission approval or not. Similarly, when the employee has not applied for compensation, but an award

has been entered at the *ex parte* request of the employer, even Texas, with its express statute forbidding an award to one who has 'elected to pursue his remedy' in another state, permits a supplementary award." 2 Larson's Workmen's Compensation Law §§ 85.40, 85.50, pp. 363–365.

■ A compensation agreement filed with and approved by the Indiana Board has the full force and effect of an award. Burns' Indiana Statutes, Annotated, § 40–1508; Carrico v. Templeton Coal Co., 87 Ind.App. 145, 159 N.E. 695 (1928). However, a cursory look at the Indiana statutes does not reveal any expressed intention, within the context of the *McCartin* rule as it has been interpreted by the authorities quoted above, to prohibit subsequent and additional recovery in another state. It was said in Bebout v. F. L. Mendez & Co., 110 Ind.App. 28, 37 N.E.2d 690, 693 (1941), that it is "not the intention of the statute to impose on the employer a double liability, nor to permit compensation to be paid twice for the same injury," but that was a case in which compensation was sought in addition to a common law settlement received from a third-party tort-feasor. The claimant in this case does not seek a double recovery. Under the general rule heretofore stated he is chargeable with all he has received pursuant to the agreement.

■ In reaching our conclusion on the facts of this case we do not hold that there are no circumstances under which a compensable claim in this state could not be lost by an election to proceed under the law of another state. See, however, 2 Larson on Workmen's Compensation § 85.60, p. 365, with respect to the policy considerations applicable to successive awards. Had Lemaster knowingly and understandingly chosen to file his claim in Indiana and prosecuted it to a final award he might occupy a different legal position here. But he did not do that. He merely signed a paper put before him which he was given to understand was necessary to get his pay started. Its filing with and administrative approval by the Indiana Board were accomplished through the unilateral intiative of the insurance company, without either his knowledge or his understanding. See Miller v. National Chair Co., 127 N.J.L. 414, 22 A.2d 804, 809 (1941), aff'd 129 N.J.L. 98, 22 A.2d 125 (1942), in which, under a similar fact situation, the defenses of election, estoppel and res judicata were held inapplicable.

The judgment is affirmed.

All concur.