THE STATE, THE HOBOKEN LAND AND IMPROVEMENT COMPANY, RELATOR, v. OLIVER L. MARVIN, TREASURER AND COLLECTOR OF THE BULLS FERRY ROAD SEWER ASSESSMENT, IN THE TOWNSHIP OF WEEHAWKEN.

A construction of the act of 1872 (*Pamph. L.*, *p.* 1379) and the supplements thereto relative to the improvement of the Bulls Ferry road and the building of sewers therein, in respect to the manner in which assessments for benefits for building said sewers must be paid.

This is a rule upon Oliver L. Marvin to show cause why he should not be compelled, by a writ of *mandamus*, to accept certain moneys and improvement certificates heretofore tendered to him by the relator in payment of certain assessments made upon its property. The facts will appear in the opinion.

Argued at June Term, 1888, before Justices SCUDDER and REED.

For the relator, *A. I. Smith.*

For the respondent, *Leon Abbett.*

The opinion of the court was delivered by

REED, J.   The assessments in question were made for the costs of constructing a sewer in a road known as the Bulls Ferry road, which sewer was partly built within the territory of the township of Weehawken, in the county of Hudson. The improvement, of which the sewer is a part, was executed under a series of legislative acts, the first of which was passed in 1872.   *Pamph. L., p.* 1379.   This act and the first two supplements to it, namely, those of 1873 (*Pamph. L., p.* 623) and 1874 (*Pamph. L., p.* 736), provided for the building of and the method of paying for the Bulls Ferry road improvement.   The supplement of 1874 (*Pamph. L., p.* 722) provided for the construction of a sewer in said road as a part of the improvement.   The assessment for the construction of the road and the assessment for building the sewer, however, was kept entirely distinct.   There were also other supplements which were passed in reference to the sewer assessment alone. All these acts will be found stated in the case of *King* v. *Reed,* 14 *Vroom* 186, decided in this court when the assessments for the cost of building the sewer was before this court on *certiorari.*   The act of 1874 (*Pamph. L., p.* 732), which was the first act which provided for the construction of the sewer in the road, provided the following scheme for the payment of the expense of the work:   The commissioners who, under the original Road act, were to be appointed to execute the improvement, were to issue and sell improvement certificates, to bear interest at seven per cent., to be receivable in payment of assessments and to be transferable by endorsement for all expenses incurred in executing the act.   These certificates were to be paid out of moneys to be deposited in

the First National Bank of Hoboken by the town and townships, or convertible into bonds as thereafter provided. The money above mentioned which was to be deposited in the First National Bank of Hoboken by the towns and townships, was, by the terms of the act last mentioned, to be raised in the following way : When the work was completed, then, by the terms of section 7 of the said act, three commissioners were to be appointed to ascertain the cost of the work and to ascertain how much of the amount was the benefit of each town or township in the drainage area, in order that bonds might be issued therefor. The act then, in section 8, empowers the townships to issue bonds for the amount of the assessment against them, to sell the same and deposit the proceeds in the First National Bank in the city of Hoboken, to be used by the bank in redeeming the improvement certificates. The time when these bonds were to be issued was changed by the terms of a supplement passed in 1875. *Pamph. L., p.* 302, § 5.

Instead of awaiting the completion of the work and the final assessment of the amount of the benefits against the township, so that the amount of bonds which the township should issue and be ultimately 'responsible for should be definitely fixed, this supplement provided another plan. It enacted that the township might anticipate the assessment and should issue bonds not to exceed an amount fixed by the statute for each town, namely, $15,000 for the township of West Hoboken, $30,000 for Weehawken and $45,000 for the township of Union. The act provided that in case any town or township should issue bonds to a greater extent than it should be finally decided to be its share of the costs, the other towns or townships should reimburse such town such excess, with interest.

The township of Weehawken actually issued bonds to the amount of $15,000. When the final assessment was made among the towns, it was ascertained that the cost of the work was $72,145.02, and the assessment to Weehawken was

$28,323.85.   The liability of the township of Weehawken was thus fixed by this assessment.

The assessment against the towns and townships, however, is only one part of the statutory plan which is involved in the present litigation.   The act of 1874 (*Pamph. L., p.* 732, § 7), after enacting that the commissioners named shall make the above mentioned assessment against the towns and townships, provided as follows:  "Said assessors shall then make an assessment on each separate lot or parcel lying within the drainage area according to the benefits, which assessment shall become a lien on said property, and shall be collected, with interest thereon, in such annual installments as each separate town or township shall for itself decide."   The same act (section 8) provides that the interest and a certain percentage of the bonds issued by any town or township, as already mentioned, shall be annually repaid out of the aforesaid property within its limits, which property, if the assessments are not paid, shall be sold in the same manner as land is sold for unpaid taxes in each respective town and township.   The two assessments, both against the towns and townships and against the lots of land, were made at the same time and were finally adopted on the 25th of June, 1878.   Among the lands lying within the limits of the township of Weehawken which were assessed was that of the Hoboken Land and Improvement Company.   Five pieces of land were assessed sums which aggregated $6,273.36.   Before the assessments were finally adopted, writs of *certiorari* had been allowed to certain persons whose land had been assessed within the township.   On the 18th of February, 1878, the township committee directed that a writ should be applied for in its behalf, the costs of the same to be paid by two of the property owners who had taken or were about to take steps to review the assessment.   These writs of *certiorari* were prosecuted, and the assessment against the township of Weehawken was afterwards affirmed in the Supreme Court, and later was affirmed by the Court of Errors and Appeals at March Term, 1886.   From the date of the adoption of the final assessment, namely, June 25th, 1878, to

the date of the affirmance of the same by the Court of Errors, no steps were taken toward the collection of the same. The township, as well as the property owners, were awaiting the final result of the litigation. After the decision by the Court of Errors, in March, 1886, the township committee of Weehawken, at a meeting held on October 18th, 1886, appointed O. L. Marvin, the tax collector of the township, to be the collector and treasurer of these assessments, his bond to be $10,000. His bond was approved September 19th, 1887. The question of payment then confronted those whose land had been assessed, among whom, as I have remarked, was the Hoboken Land and Improvement Company.

The first question which naturally presented itself in connection with the payment of the sum of $6,344.46, the amount assessed upon its land, was, whether this sum had been bearing interest from June 25th, 1878, to October, 1886, and if so, what rate of interest. Then again, this company was the owner of certain Bulls Ferry road improvement certificates, amounting in their aggregate face value and interest to $6,339.20.

The company was also the owner of improvement certificates issued on account of the sewer improvement, amounting in their aggregate face value and interest to $6,196.06. The township committee had instructed the collector not to receive in payment of the assessments any certificates, but, on the contrary, to require all payments to be made in cash. The question was presented whether the statutes under which the improvement was executed did not expressly or impliedly require that these certificates should be receivable by the towns and townships in payment of assessments against land within their respective limits.

Then again, it appears that in making the sewer improvement certain land of the Hoboken Land and Improvement Company was taken, and the company was awarded the sum of $3,000 for the same. This sum remains unpaid, and it is queried whether it can be regarded as a proper offset against the assessment for benefits.

For the purpose of bringing these questions to a legal solution, the relator made tenders to Mr. Marvin in several different shapes. Each tender, however, was made upon the assumption that the assessment carried no interest from the time of its adoption to the time of Marvin's appointment as collector and the approval of his bond on September 19th, 1887. The relator had two notions in respect to the rate of interest which it might be called upon to pay after the date of September 19th. One was that interest was to be computed at eight per cent. from the above date to the date of the tender, November 9th, 1887. The other view was, that inasmuch as Marvin, when he demanded payment to be made, had fixed November 10th as the day of payment, there was, after the latter date, a default, which, by the provisions of an act (*Pamph. L.* 1875, *p.* 553, § 9), would, if applicable, fix the subsequent rate at twelve per cent. So tenders were made to meet both the views. There was a tender in cash of the amount of the assessment, with interest calculated at eight per cent. from September 10th, 1887, to the date of the tender. There was a similar tender, with interest calculated at eight per cent. from September 19th, 1887, to November 10th, and calculated at twelve per cent. thence up to the date of the tender. Then there were the tenders of the certificates and a tender of the claim for damages for land taken already mentioned.

The question presented is, whether Mr. Marvin should have accepted any one of the tenders made. If so, the writ of *mandamus* can be invoked to compel his reception of the tender. *State, ex rel. Miller,* v. *Love,* 8 *Vroom* 261 ; *Brennert* v. *Farrier,* 18 *Id.* 75.

In viewing the cause it appears at a glance that the important feature is the claim of the relator that no interest can be charged against the land owner during the eight years intervening between the adoption of the assessment and the appointment of or qualification of a collector.

The counsel for the relator insists, in the first place, that no more interest can be collected from the persons assessed

within the limits of Weehawken than a sum sufficient to keep down the interest upon the bonds actually issued.

He insists, secondly, that no interest accrued until the amount of an installment was fixed by the township committee and payment thereof was called for.

He insists, thirdly, that no interest accrued until some person was designated by the township committee to collect the said assessment.

First, then, I will speak of the contention that no more interest upon an assessment can be collected than is required to pay the interest upon the bonds outstanding. The point of this argument will be perceptible when it is remembered that while the entire assessment against Weehawken was over $28,000, for some reason bonds to the amount of $15,000 only were issued, and when the more important fact is stated that the back interest which has accrued upon those bonds has been paid by general township taxation. So, as I understand the facts, there is due to the bondholders no interest which accrued previous to the appointment of Mr. Marvin as collector. The argument in support of this point is mainly rested upon the language found in the original supplement of 1874 (*Pamph. L., p.* 736, § 8), already substantially set forth. The section provides that the interest and a certain percentage of the bonds, to be determined by each individual town and township, shall be annually repaid to the respective towns and townships out of the aforesaid property, meaning the property assessed under section 7, and the percentage of principal collected upon property assessed shall be applied to the redemption or cancellation of the bonds so issued to the extent of such percentage.

In respect to this contention, I observe, first, that the statute does not provide that the interest upon the assessment collected shall be applied specifically to the payment of the interest due upon the bond. I remark, secondly, that by the terms of the eighth section above mentioned, the township was the debtor of the bondholder, and the credit and property of the township was pledged for the redemption of the bonds.

It seems clear, therefore, that the fact that the township had advanced the interest did not in the least abate the township's right to collect the installment of interest and principal due upon the assessment. The assessments were not due to the bondholders, but to the township. In dealing with not only this but with all the features presented in this case, it is necessary to keep this in mind. The scheme provided by the statute for a double assessment, one against the township and another against the land owners in the township, was adopted, as I have already observed, because the improvement was not confined to territory within the limits of the township of Weehawken. The assessments against each town and township through which the improvement ran was necessary for the ascertainment of the part of the expense for which each municipality should be responsible. In respect to such part, when ascertained, each town and township occupied the same position toward the benefited property owners within the township limits as if the work had been executed entirely within its territory. The township, like any other municipality, unless there is a statutory provision to the contrary, was responsible for the expense of the work. It was entitled to recover the assessment against the property for actual benefits. If enough property happened to be actually benefited to an extent which would repay the cost, the township would be reimbursed entirely. If, however, the actual benefits were less than the cost, or there were irregularities in assessment, or other causes which prevented a collection of such assessment, the township, nevertheless, was responsible for the whole expense. The plan for issuing bonds was provided for distributing the burden of payment through a number of years. It is, of course, apparent that the legislature, in the original supplement, provided that the bonds should be issued for the entire cost, and it is quite likely that it was supposed that the special assessment upon property would repay the entire cost. It is equally apparent that the amount of bonds which should be issued under the later supplement would not be equal to the assessment against the township,

## FEBRUARY TERM, 1889.    293

22 Vroom.        Hoboken Land and Imp. Co. v. Marvin.

and therefore would not be a measure of the extent of the township's right to collect assessments against the land owner, either principal or interest. The language relied upon by the relator to demonstrate that only enough of the assessment can be collected to pay the bonds actually issued, is contained in the act which provided that bonds should be issued after the assessment and for the full amount thereof. Under the provisions of that act the amount of the local assessments could not, in the aggregate, exceed the assessment against the township, therefore no call for payment could be in excess of the amount of bonds issued but by the later supplement; the amount of bonds might or might not equal the assessment, but the township remains, just the same, liable for the whole amount of the latter. Indeed, the whole scheme provided by the statute shows that the local assessments were due in their entirety to the township, and the question of their collection was one resting between the township and the person assessed.

Before leaving this point, however, I remark that even if it be conceded that the amount of bonds issued is the measure of the amount of assessments which can be collected, such concession does not work to the advantage of the relator. It does not appear in the case what the amount of the valid assessments is. It does appear that some were set aside by this court. Whether those that still stand equal or exceed the amount of bonds issued does not appear.

The second ground taken by the counsel for the relator is, that no interest accrued upon the assessment until an installment was called for. This contention involves a question of statutory intention, and the meaning of the act seems to be plainly opposed to such a view. The language is, that the said assessments shall be collected, with interest, in such annual installments as each township shall decide. The act does not provide for the collection of an installment with interest upon the installment from the time payment is provided, but it provides interest upon the assessment itself. It is true that until a call is made none of the provisions for enforcing payment, such as the sale of land, could be invoked. The right of the

township to resort to any proceeding to collect the assessment rested upon a call for an installment, but that involves quite a different question from the present, which is, whether, when the installment is called for, interest as well as principal is collectible. The answer to the latter depends upon the terms of the statute, and the whole statutory scheme displays a clear intention to charge interest from the time of the adoption of the assessment.

The third point made by the relator is, that there was no person existing, up to the time of Mr. Marvin's appointment, to whom the assessment could be paid.

We have already held that the statute provides that back interest shall be paid on the assessment, although the call is subsequently made. The statute which confers upon the township the right to call for the payment of the assessment gives impliedly the option as to when the call shall be made, as it does expressly the option to call for such portions as it chooses. Unless there exists some fundamental objection to the enactment of these provisions, no serious question exists in reference to the right of the township to collect back interest, although no call was made for, and there was no person to receive the same until Marvin was appointed collector. If, however, I was of the opinion that power was given to the township to exclude the property owner from paying his assessment within a reasonable time, I would be inclined to doubt the validity of the legislation. I should question the ability of the legislature to place a lien upon a man's land for an assessment, and yet deprive him for an unreasonable time of the privilege of paying the debt and removing the lien. The doubtful character of such legislation would be increased if, in the meantime, the debtor and his land is becoming more and more encumbered with accruing interest.

As I regard the situation, this question is not in the case. It is not here because, I think, there was no time during the eight years at which the property owner might not have paid, or compelled the acceptance by the township, of the assess-

ment.   At least this was so at any time after the lapse of a reasonable period from the adoption of this assessment.   The debt was one due to the township.   It was payable to and receivable by the township, as any other debt.   The township treasurer was bound to receive it, as he was bound to receive any other debt due to the township.   If he or the township committee refused the proffer, he or they could have been compelled to accept it by the use of the same writ that is now invoked by the relator.   The land owners were not interested, except as citizens, in the disposition of the money by the township after its reception.   Into what bank the treasurer or the township committee paid it, or to what object it was devoted, concerned others, but not the assessed land owner as such.

I have now disposed of the legal aspects of the argument that no interest should be charged against the relator until the date of the approval of Marvin's bond as collector of the assessments.   Other considerations have been urged, which can hardly be regarded as legal objections to the collection of this interest.   The fact that the township committee were parties to the litigation which resulted in keeping the question of the legality of these assessments in suspense for eight years is strongly presented.   It is urged that this position of the township committee, coupled with its inaction in calling for payment during that period, prevented the payment of the assessment long ago, and that thus the large arrearages of back interest is due to the township's conduct, and its payment should not be enforced against the land owner.

It is, of course, a hard requirement that this large arrearage of interest should be now paid.   Back interest upon any debt is not a pleasant obligation, but the payment of back interest upon an assessment for public improvement is particularly distasteful, even more so than the payment of the assessment itself.   But while it would be a pleasant duty to relieve the land owner of this burden, still it is obvious that if this should be done it would be done at the expense of others.   Some one must lose this interest.   During all this

time the township has been paying interest on bonds of the aggregate amount of $15,000. The remainder of the assessments the township must pay, with interest. It is a question, therefore, whether the township or the land owners shall pay this sum. Of the effect of the delay upon the legal rights of these parties we have already spoken, and it is purely a legal question. But aside from that it may be remarked that the quiescence of all parties during this period was induced by the hope that the assessments would be vacated. All rested in expectation of a favorable result. No one was apparently more blamable for this attitude than another, and it did not affect the legal rights of any one in respect to the matters now in question. Our conclusion is, therefore, that interest upon the assessment from the date of its adoption is collectible.

We might stop here, for it is perceived that as no tender included any interest accruing previous to Marvin's appointment, there was no legal tender, and no writ can go compelling the collector to accept any one of the tenders. As, however, other questions concerning the matter of paying these assessments were discussed, and as their solution seems essential to the settlement of this protracted proceeding, our opinion upon those questions may be of use.

In the first place, we think that the rate of interest is fixed by section 9 of the supplement of 1875 (*Pamph. L., p.* 553). Its provisions are, that the assessments on land benefited for any sewer built by said commissioners under the authority of said act, or any supplements thereto, * * * shall be payable in such annual installments as the town council or township committees of the townships shall determine, with interest at eight per cent. per annum until default, and after default at twelve per cent. per annum. This supplement of 1875 provides for certain sewer extensions. The sewers for the building of which the present assessment is made was not constructed under its provisions. The question mooted is, whether the above provision applies to work done under any act except under this supplement. I am of the opinion that it applies to all the sewer assessments made under any of the

supplements to the act of 1872. I am unable to see any reasonable way of restraining the meaning of the words "said act and any supplement thereto," so that they mean under this act, meaning this supplement and supplement to it. "Said act" means the original act of 1872. If there was a doubt of this it would be dissipated by observing the way in which the same words, "said act," are employed in the preamble to the supplement of 1875. The preamble alludes to the commissioners appointed by said act to improve Bulls Ferry road as having in charge, also, the making of certain sewers. The words "said act," as there used, manifestly apply to the original act of 1872. It follows that the same words were used with the same signification in section 9. The rate of interest, therefore, fixed by the supplement of 1875 applies to all assessments for the expense of sewers built under any one of the series of supplements to the original act, and includes the present assessment.

The next question is in respect to the duty of the township to receive the improvement certificates held by the land owner, in payment of the present assessment. We think that it is clear that the certificates issued for the expense of building the sewer are so receivable. Section 6 of the supplement of 1874 (*Pamph. L., p.* 732) expressly declares that they shall be receivable in payment for assessments. The assessment alluded to is the sewer assessment.

The certificates issued under the acts of 1872 and 1873 are, by the express terms of section 6 of the last mentioned act, receivable for assessments. But the assessments mentioned in that section are for constructing the Bulls Ferry road. Each improvement was to be built, paid for and assessments were to be imposed for and paid for as a separate scheme. The certificates for the sewer assessments are to be paid out of the money received from the towns and townships in payment of the sewer assessments. The compulsory reception of any other certificates in payment of those assessments would be equivalent to the payment of other certificates out of the moneys which, by the terms of the act, are to be devoted to

the payment of these certificates alone.    It would be an illegal diversion of these moneys from their statutory purpose. The road certificates are not receivable in payment of these assessments.

Lastly, is the sum of $3,000 and interest, the amount awarded for the value of land of relator taken for this improvement, deductible from the amount of the assessment against the relator?    We think not.    This sum is not a debt due by the township of Weehawken to the relator.    All the expenses of the work was to be paid by improvement certificates.    If this expense had been so paid for, then the certificates would, by the express direction of the statute, be receivable by the township in payment of the assessment against land owners, and by the commissioners for assessments against the towns and townships.    But the township cannot pay over anything but money or certificates in liquidating the assessment against it.    It is not obliged to credit against this assessment any debt incurred by the commissioners, unless that debt is put into the shape of a certificate for improvement.

The writ must be refused.