43 N.J. Super. 68 (1956)
127 A.2d 591
THOMAS J. ENGLISH, PETITIONER-APPELLANT,
v.
STOKES MOLDED PRODUCTS, INC., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 1956.
Decided December 10, 1956.
*70 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Lawrence N. Stein argued the cause for petitioner-appellant (Mr. Louis H. Roth, attorney).
Mr. Edward B. Meredith argued the cause for respondent-respondent.
The opinion of the court was delivered by CONFORD, J.A.D.
Petitioner, a Trenton resident, worked for respondent at its plastics plant at Trenton from May 1951 continuously until April 14, 1952, and on that day began to work for it at its other plant across the Delaware River at Yardley, Pennsylvania. He sustained an accident while at work at Yardley on June 15, 1953. The question involved in this case is whether at that time he was working pursuant to an employment contract made in New Jersey. If so, the Division of Workmen's Compensation *71 had jurisdiction to make the award it granted the petitioner; per contra, if the then subsisting employment relationship is to be deemed sequential to a superseding contract made in Pennsylvania. Gotkin v. Weinberg, 2 N.J. 305 (1949); see Bowers v. American Bridge Co., 43 N.J. Super. 48 (App. Div. 1956). The Mercer County Court held for respondent, concluding that petitioner "has failed to prove that his employment and accident in Yardley, Pa. arose out of a contract geographically chargeable to the State of New Jersey."
The issue is one of mixed fact and law. The legal question grows out of a subtle blend of contract law and the underlying philosophy of the application of our workmen's compensation statute to employment relationships having an inception in this State. See Miller v. National Chair Co., 127 N.J.L. 414 (Sup. Ct. 1941), affirmed 129 N.J.L. 98 (E. & A. 1942); Franzen v. E.I. du Pont de Nemours & Co., 128 N.J.L. 549 (Sup. Ct. 1942); Crawford v. Trans World Airline, 27 N.J. Super. 567, 568 (Cty. Ct. 1953).
First, as to the facts. Respondent is a New Jersey corporation, its operation at Yardley having been a division of the same corporate entity. Petitioner's testimony was essentially to this effect: when he was first engaged the Trenton plant was doing experimental work in plastics and he did that kind of work under a chemist named Duddy. His position was that of a "wet treader." This was not explained. He and other workers at Trenton were told the company was going to go into production on the product at Yardley and that most of them would "eventually go to Yardley." The Yardley plant opened in November 1951, and Duddy was transferred there. Several months later petitioner was told that "the chemist at the Yardley plant wanted to see" him. He went there the same day and Duddy said he wanted him "over there." Petitioner responded that "it was up to the Trenton plant, whenever they would release me to come over." Several days later, "on a Wednesday or Thursday," his Trenton superior, Lou De Angelo, *72 told him that "they wanted" him "to come over to Yardley to work" but that he (De Angelo) could not let him go before the end of the week and that he should report there on Monday. He did so. The proofs are that he commenced at Yardley on April 14, 1952, a Monday. He testified he worked at Trenton up until the prior Saturday or Sunday; that he was never laid off at any time before his accident; and that he received a vacation allowance at Yardley in July 1952 based upon the Trenton service which would not have been due a new employee by that time.
Petitioner's job classification at Yardley was as "tank operator." How much different his actual duties at Yardley were from those at Trenton does not appear. At Trenton his compensation rate rose from $1.26 per hour as a "wet treader helper," through $1.44 1/2 as a "wet treader," to $1.71 as a "wet treader leader." His initial rate at Yardley was $1.57 per hour, rising to $1.76. The payroll for Yardley was made up at Trenton, and pay checks for Yardley were issued at Trenton and brought over for disbursement.
Respondent's defense was adduced mainly through Mr. Kornbleet, its personnel manager, and Mr. Connor, plant manager of the Yardley Division. The testimony of both of these gentlemen is replete with conclusions, some volunteered, evidencing appreciation of the legal consequences in this case of the hypothesis that a termination of the employment relationship took place at Trenton and a completely new employment contract was made in Pennsylvania. Kornbleet identified an employment application signed by petitioner, dated December 10, 1951, as having been made in reference to work at Yardley. He said this and other similar applications were "accepted and collected" at Trenton, and, when the Yardley plant was opened, were "forwarded * * * to the Yardley plant for their action"; also that all hiring for Yardley was done at Yardley. Kornbleet produced a copy of a "separation notice" dated April 10, 1952, noting that petitioner was "laid off," effective April 16, 1952, "to allow for replacement by employee with greater seniority." He said the "procedure" was for oral notice of *73 the layoff to be given the employee and for a list of the men laid off to be given to the union. Neither Kornbleet nor any one else testified that any notice, verbal or otherwise, was given petitioner concerning a layoff. Nor did he testify concerning what "employee with greater seniority" was to replace petitioner. This witness had no direct knowledge whatsoever concerning the particular circumstances of the shift of petitioner from Trenton to Yardley. Respondent offered no particularized testimonial refutation of petitioner's story as to how the transfer occurred. Connor declined to deny that petitioner conferred with Duddy about the matter at Yardley the week prior to the shift. Neither Duddy nor De Angelo was produced as a witness by either side.
Connor's only direct knowledge of the matter was that petitioner had come in December 1951 to see what progress the Yardley plant was making and to tell him "he was filing an application." He knew nothing concerning the particular circumstances of petitioner's actual coming to work there in April 1952 although there were only nine or ten workers there at the time. His testimony, too, was almost entirely confined to matters of procedure. Union contract negotiations were separate for Yardley. Petitioner was an officer of the union at Yardley.
Kornbleet testified that a telegram was sent petitioner July 14, 1952, in accordance with a union agreement as to seniority, advising him to report for reemployment at Trenton if he was available  this notwithstanding respondent's knowledge that he was then actually working for it at Yardley. Petitioner had no recollection of such a message.
On this record there is no basis for a finding that petitioner was actually laid off at Trenton. Self-serving records of the respondent, which may or may not have been devised for the very purpose of terminating respondent's compensation liability in New Jersey, cannot establish a layoff of petitioner in the absence of any proof that he was advised thereof and in the face of his flat denial and of his credible and unrefuted account of the circumstances of his transfer. The date of the "separation notice," April 10, 1952, is *74 suspiciously contemporaneous with the time identifiable from petitioner's testimony as the occasion of his conversation with De Angelo concerning going over to Yardley the following Monday. Cf. Johnson v. Great Lakes Pipe Line Co., 358 Mo. 445, 215 S.W.2d 460, 463 (Sup. Ct. 1948). We conclude that the "separation notice" was filled out and filed by respondent without notice to petitioner when it decided to transfer him from Trenton to Yardley.
We are thus brought to the legal question, not without its inherent perplexities, as to whether the changes in the incidents of employment which were wrought in the relationship of the parties on and after April 14, 1953 dictate the conclusion that the original hiring contract had spent its force, for purposes of jurisdiction in New Jersey to make a compensation award. The cases in this area generally turn upon the significance accorded to either (a) the nature of the hiatus between the separate employment phases, or (b) the degree of change in incidents of the employment, such as compensation, title or duties, work situs, etc.
In the case at hand the problem of hiatus is minimal. There was absolute continuity of employment relationship in time, the Yardley phase immediately succeeding the Trenton phase without any interruption. As seen, moreover, no formal discharge was brought home to petitioner. In Franzen v. E.I. du Pont de Nemours & Co., supra, relied upon by respondent, there was an apparently unquestionable layoff of the employee in New Jersey and a new hiring in Louisiana. Significantly, "there was no promise of reemployment" (128 N.J.L., at p. 550), and during the interval between layoff in New Jersey and the hiring in Louisiana, there was no payment of compensation. In the present case, by contrast, compensation was uninterrupted and petitioner's leaving Trenton was accompanied with a simultaneous "re-employment" (apart from the technical implications of the term), to borrow the language in Franzen. Cf. Hi-Heat Gas Co. v. Dickerson, 12 N.J. Misc. 151, 152, 170 A. 44 (Sup. Ct. 1934), affirmed 113 N.J.L. 329 (E. & A. 1934).
*75 The implication in Franzen, supra, that a layoff accompanied by an understanding of resumption or "re-employment" would not effectively terminate the employment relationship, is supported by Hale v. Texas Employers' Insurance Ass'n, 150 Tex. 215, 239 S.W.2d 608 (Sup. Ct. 1951), and Standard Accident Insurance Co. v. Skidmore, 222 S.W.2d 344 (Tex. Civ. App. 1949).
Even the execution of a form of new contract will not dissuade a court from looking into the substance of a transaction in order to determine whether the relationship was not essentially one continuous employment. Rendleman v. East Texas Motor Freight Lines, 355 Mo. 287, 196 S.W.2d 171, 174 (Sup. Ct. 1946).
We turn to a consideration of the effect of the incidental changes in the employment relationship  rate of compensation, job classification, work situs. Must it be held that these are to be equated with a "new contract," for present purposes? Obviously, ordinary contract law concepts are not very meaningful in this context. We are not concerned here with whether a promise or agreement is actionable. It is true that contract law is applied in determining whether the original hiring agreement was made in this State, for purposes of vesting compensation jurisdiction in local tribunals. Gomez v. Federal Stevedoring Co. Inc., 5 N.J. Super. 100 (App. Div. 1949); Bowers v. American Bridge Co., supra. But the presently pertinent inquiry is whether the Legislature intended, notwithstanding that the Workmen's Compensation Act of this State is made applicable to a particular employment because originally contracted for in this State, that the jurisdiction of the local compensation tribunal should nevertheless be ousted in case of an out-of-state accident by mere reason of a change in an incident of the employment, such as wages, job classification or work situs. We do not think an answer is to be found in the abstraction that a contract, as modified in any particular, is pro tanto a different contract in a sense. Rather, it would seem, should a ratio decidendi be sought in the basic philosophy of the statute.
*76 Careful distinction must be made between the contractual assent which fixes the contract situs in this State and thereby fastens its compensation laws and remedies upon the relationship of the parties under the elective provisions of the statute, on the one hand, and any collateral or subsequent agreement by the parties that these laws and remedies should not be applicable, on the other. The latter will be of no avail. See Miller v. National Chair Co., supra (127 N.J.L., at pages 418, 419). The parties will, for example, not be permitted to settle a claim outside the confines of the statute, P. Bronstein & Co., Inc., v. Hoffman, 117 N.J.L. 500 (E. & A. 1937), even if the accident takes place beyond the borders of the State, Miller v. National Chair Co., supra; Bowers v. American Bridge Co., supra; and see Gotkin v. Weinberg, supra (2 N.J., at page 308). Not only in New Jersey, but generally, it is recognized as an "over-riding consideration that compensation is not a private matter to be arranged between two parties; the public has a profound interest in the matter which cannot be altered by any individual agreements," particularly where such an agreement would destroy otherwise existing jurisdiction. 2 Larson's Workmen's Compensation Law (1952), § 87.71, p. 395. The Miller and Bowers cases, supra, manifest that our courts will carefully scrutinize any situation in which the jurisdiction of our compensation tribunals consequent upon a New Jersey employment contract is sought to be defeated by indirection or evasion.
Had petitioner's New Jersey contract with respondent called, in the first instance, for rendition of services at Yardley, there would be no question as to the jurisdiction of the New Jersey compensation tribunal. Gotkin v. Weinberg, supra. Shall it be otherwise merely because, after petitioner began his service in New Jersey, the parties agreed that he should be transferred to respondent's other plant across the river in Pennsylvania; or because the work there was to be compensated for at a lesser rate per hour; or because the job classification was different; or for all of these reasons together? It seems to us that a legislative *77 policy so strongly grounded, as we have already indicated our own is, in the concept that employees hired here shall have the benefit of compensation at New Jersey rates and at the hands of New Jersey tribunals, is not to be averted by changes negotiated beyond our borders in mere incidentals of the employment relationship, not going to its substance. The best reasoned of the decided cases reach results consistent with this approach. Tobin v. Rouse, 118 Vt. 40, 99 A.2d 617 (Sup. Ct. 1953); Sims v. Truscon Steel Co., 343 Mo. 1216, 126 S.W.2d 204 (Sup. Ct. 1939); Pettiti v. T.J. Pardy Construction Co., 103 Conn. 101, 130 A. 70 (Sup. Ct. Er. 1925).
In the Pettiti case, supra, where it was contended that a hiring as a foreman of laborers was superseded by an out-of-state arrangement that the employee's duties should include tending a boiler for increased compensation, the court said (130 A., at page 71):
"It cannot be held to be a new contract. There was only one contract of employment, and a change of the work done, or the compensation paid the employee, would not change the relation existing between this employer and employee. The doing of additional work for increased pay was an incident of the contract of employment. To hold otherwise might, in some cases, where the day's work was distributed among several lines of work, create as many different contracts of employment, and with every new piece of work outside the particular work for which the employee was employed a new contract would be formed. The work done at one time would be under the Connecticut Compensation Act (Gen. St. 1918, §§ 5339-5414), while, just succeeding its performance, the next work done would be under another state Compensation Act. The result would be a situation intolerable to both employer and employee. Neither employer nor employee intended the formation of a new contract with each change in the character of the work."
As to a similar contention by an employer in the Sims case, supra, the court said (126 S.W.2d, at page 208):
"`We are of the opinion that there was only one contract of employment in the case at bar. The fact that Sims was given additional duties and additional pay did not change the relationship existing between employer and employee.'" *78 Accord: Crawford v. Trans World Airline, supra (27 N.J. Super., at page 570); but cf. Green v. Industrial Commission, 86 Ohio App. 356, 91 N.E.2d 815 (Ct. App. 1949); Kennedy-Van Saun Mfg. & Engineering Corp. v. Industrial Commission, 355 Ill. 519, 189 N.E. 916 (Sup. Ct. 1934).
We have, however, one serious reason for pause in applying the rule of the foregoing cases to the matter at hand. That is a statement of contrary implication in the opinion of the former Supreme Court in Miller v. National Chair Co., supra, affirmed on the basis of the opinion below by the Court of Errors and Appeals. We have cited that case previously in this opinion for the rationale underlying its holding that the liability of an employer under a New Jersey contract for compensation to an employee injured in another state cannot be modified by a subsequent compromise agreement of the parties approved by the administrative authorities of the other state. In another aspect of the ruling the court held that the prior existence of an employment by the petitioner in New York with a different corporate entity did not affect the rise of a new employment contract between the petitioner and a newly-organized New Jersey corporation in this state. Immediately after that holding the court said (127 N.J.L., at page 421):
"Moreover, petitioner's salary was increased during the course of his employment by the defendant in this State; and thus a new contract came into being."
This statement was not necessary to the decision of the court, but nevertheless, as a deliberate expression of opinion on a question directly involved, ranks as a judicial dictum. Crescent Ring Co. v. Travelers Indemnity Co., 102 N.J.L. 85, 89 (E. & A. 1926). As such, while not a binding precedent, it is entitled to great weight as the opinion of the former Supreme Court, adopted by our former court of last resort. Ibidem. But for reasons we have already advanced, we think it ought not to be applied in the instant situation. We cannot believe the Legislature intended no firmer anchor for the vesting of New Jersey *79 rights and remedies in compensation consequent upon a New Jersey hiring than the fragile base of a contract evanescent upon its slightest out-of-state modification.
Applying the criterion we deem most closely reflective of the statutory intent, we conclude that the relationship of employer-employee between the parties before us, originally arising in New Jersey, was neither terminated nor impaired in any substantial particular by the arrangements under which petitioner continued to work for respondent at Yardley. The modifications of the hiring were only in respect of matters incidental to the basic employment relationship and did not supersede it so as to obviate the applicability of New Jersey compensation laws or to oust the jurisdiction of New Jersey tribunals to grant an award for a subsequent accident arising out of the employment.
In view of our conclusion that there was no "new contract," there is no occasion for our consideration of the alternative contention of the petitioner that the "new contract" was consummated in New Jersey.
The judgment of the Mercer County Court is reversed and the determination and judgment in the Division of Workmen's Compensation is reinstated.