201 N.J. Super. 392 (1983)
493 A.2d 531
LEWIS A. SERKIN, INDIVIDUALLY AND AS REPRESENTATIVE OF ALL PROPERTY OWNERS AFFECTED BY SPECIAL ASSESSMENT PURSUANT TO ORDINANCE # 1079, PLAINTIFF,
v.
TOWNSHIP OF OCEAN (MONMOUTH COUNTY), A MUNICIPAL CORPORATION, AND MARTIN L. BAILEY, COLLECTOR OF TAXES, DEFENDANTS.
HUXLEY HOLDING COMPANY, PLAINTIFF,
v.
THE TOWNSHIP OF OCEAN, DEFENDANT. J.R.H. ELECTRICAL-MECHANICAL CONTRACTING CORP., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
THE TOWNSHIP OF OCEAN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division Monmouth County.
Decided February 8, 1983.
*394 Paul L. Blenden for plaintiff Lewis A. Serkin.
William R. Connelly for plaintiff Huxley Holding Co. (Ravin, Davis & Sweet, attorneys).
Edward C. Stokes, III for plaintiff J.R.H. Electrical-Mechanical Contracting Corp. (Stokes & Throckmorton, attorneys).
*395 Dennis M. Crawford for defendants (Schaefer, Crawford & Hirsch, attorneys).
RIMM, J.T.C. (temporarily assigned).
Plaintiffs, Huxley Holding Co. (Huxley), J.R.H. Electrical-Mechanical Contracting Corp. (J.R.H.) and Lewis A. Serkin, individually and as a representative of all property owners affected by special assessments pursuant to ordinance no. 1079 (Serkin), each brought an action challenging the amount of interest to be charged on installment payments of assessments placed on their properties following certain local improvements.[1] The action brought by Serkin was certified as a class action, and the three matters were consolidated for trial. Following the order for consolidation and the pretrial conference the matters were submitted to the court for disposition on stipulated facts. The court must decide whether interest on the installment payment of assessments for local improvements is "legal interest" under N.J.S.A. 40:56-35 or the rate "as may be imposed upon unpaid taxes" in accordance with N.J.S.A. 40:56-32.
The parties stipulated that Ocean Township properly passed ordinance no. 1079 providing for the improvement of various streets abutting the plaintiffs' properties. The ordinance authorized the issuance of bonds in an aggregate amount not to exceed $539,000. Section 7.c. of the ordinance provided as follows:
That the number of annual installments within which the special assessments to be levied on the lots and parcels of real estate benefited by the construction of said improvements described in Section 1 hereof is ten.
The ordinance also authorized the issuance of bond anticipation assessment notes in amounts to be determined by subsequent resolutions of township council.
Defendant completed the improvements and the assessor submitted a revised report on October 30, 1981 fixing the *396 assessment for each parcel of real estate affected by the improvements. The report indicated that the total costs assessed under the ordinance were $525,753.13 as follows:

Construction Costs $407,994.56
Miscellaneous Costs
 Bond Sale 9,010.62
 Interest[2] 51,169.89
 Engineering 50,765.26
 Legal, Advertising and other 6,812.80 117,758.57
 _________ __________
Total Costs $525,753.13

The assessor's report was accepted by resolution of the governing body on November 10, 1981. The resolution also provided for each affected property owner to have two months from the date of the confirmation of the assessments to pay the whole assessment without interest or to pay the assessment in ten equal yearly installments with legal interest. The tax collector then sent a bill to each affected property owner with a covering letter stating that the entire assessment would be payable in full without interest on or before January 10, 1982. The bill also set forth ten equal annual payments in accordance with the provisions of ordinance no. 1079.
Defendant charges interest at the rate of 8% a year on the assessments under $1,500 and at the rate of 18% a year on the assessments over $1,500. In charging 8% and 18% interest on the assessments, depending on the amount of each assessment, defendant relies on two statutes. N.J.S.A. 40:56-32 provides:
When any assessment shall not be paid within two months after the date of confirmation thereof interest thereon from the date of confirmation shall be imposed at the same rate as may be imposed upon unpaid taxes in the municipality.
*397 Since plaintiffs did not pay their assessments within two months after the date of confirmation, interest was imposed in accordance with N.J.S.A. 54:4-67, which provides in pertinent part as follows:
The governing body may also fix the rate of interest to be charged for the nonpayment of taxes or assessments on or before the date when they would become delinquent, and may provide that no interest shall be charged if payment of any installment is made within the tenth calendar day following the date upon which the same became payable. The rate so fixed shall not exceed 8% per annum on the first $1,500.00 of the delinquency and 18% per annum on any amount in excess of $1,500.00, to be calculated from the date the tax was payable until the date of actual payment.
Defendant pays interest at the rate of 9% a year on the improvement bonds, as set forth in a resolution dated March 16, 1981.
Plaintiffs argue that the ordinance adopted by the township is authorized by N.J.S.A. 40:56-35 which itself contains a provision for interest to be charged on the installments.
The governing body may by resolution provide that the owner of any real estate upon which any assessments for any improvement shall have been made may pay such assessments in such equal yearly installments, not exceeding ten, with legal interest thereon, and at such time in each year as the governing body shall determine, but any person assessed may pay the whole of any assessment, or any balance of installments, with accrued interest thereon, at one time.... [N.J.S.A. 40:56-35; emphasis supplied]
"Legal interest," plaintiffs argue, is 6% a year in accordance with N.J.S.A. 31:1-1.
Plaintiffs also argue that, in any event, the maximum interest rate which the municipality may charge the property owners is the rate it pays on the bonds, 9% a year, relying on McNally v. Teaneck Tp., 75 N.J. 33 (1977). In that case the Court held that assessments for local improvements made in accordance with N.J.S.A. 40:56-1 et seq. may not exceed the benefit to the property and may not be used for revenue raising purposes.[3]
*398 Defendant responds that in charging 8% interest a year on assessments under $1,500 and 18% interest a year on assessments in excess of $1,500 it relied on Mira Land Development Corp. v. Matawan Bor., 133 N.J. Super. 440 (App.Div. 1975), certif. den. 68 N.J. 278 (1975). There the court held that the statutes dealing with assessments for local improvements, N.J.S.A. 40:56-21 et seq., require that when the original assessment is reduced by judicial order the revised assessment bears interest in the same manner and from the same date as if the original assessment had been made in the revised amount. The court said that all assessments for local improvements are payable in full immediately upon the confirmation of the original assessment by the local governing body and certification thereof to the tax collector. N.J.S.A. 40:56-31. If the assessments are not paid in full within two months after the confirmation, interest will be imposed on the unpaid amount "from the date of confirmation ... at the same rate" as provided for unpaid general property taxes. N.J.S.A. 40:56-32. The taking of an appeal from an assessment does not affect the obligation of the owner of the benfited property to pay the assessment within two months of confirmation in order to stop the accruing of interest. The landowner must pay either principal or interest pending an appeal of his assessment. If he is successful in obtaining a reduction in his assessment, he is entitled to a refund of any amount paid in excess of the revised assessment.
In Mira the court did say that interest was due on an unpaid assessment at the same rate as imposed upon unpaid property taxes, "whether or not the governing body has authorized deferred payment of the assessment in installments." Mira, supra, 133 N.J. Super. at 443. However, the issue presented to the court was the correct date from which interest was to be paid when the original assessment is subsequently reduced by court order. The opinion does not indicate that the court either had to consider or actually did consider the rate of interest to be charged.
*399 Whether this court must follow Mira with respect to the interest rate under N.J.S.A. 40:56-35 depends on whether the quoted passage from the opinion is judicial dictum or holding. "It is firmly established that dictum, while entitled to great weight, does not invoke the principle of stare decisis." Herschberg v. Taxation Div. Director, 2 N.J. Tax 121, 129 (Tax Ct. 1981).
The court's holding was limited to answering the question of whether an assessment revised as a result of judicial review earns interest from the same date as the original assessment. The court answered in the affirmative, stating that the "essential considerations ... [were] the date payment of the assessment is required to be made or the obligation to pay interest if payment of the assessment is not made when due." Mira, supra, 133 N.J. Super. at 445. The court's statement with respect to the interest rate on installments was not necessary to the court's resolution of the narrow issue before it. The rate of interest to be charged when the installment provisions of N.J.S.A. 40:56-35 are adopted by a governing body was not before the court and the court's pronouncement on that point was dictum.
In reviewing a statement on the issue before it made by the former Court of Errors and Appeals, the Appellate Division in English v. Stokes Molded Products, Inc., 43 N.J. Super. 68 (App.Div. 1956), said:
This statement was not necessary to the decision of the court, but nevertheless, as a deliberate expression of opinion on a question directly involved, ranks as a judicial dictum. Crescent Ring Co. v. Travelers Indemnity Co., 102 N.J.L. 85, 89 (E. & A. 1926). As such, while not a binding precedent, it is entitled to great weight as the opinion of the former Supreme Court, adopted by our former court of last resort. Ibidem. But, for reasons we have already advanced, we think it ought not to be applied in the instant situation. We cannot believe the Legislature intended no firmer anchor for the vesting of New Jersey rights and remedies in compensation consequent upon a New Jersey hiring than the fragile base of a contract evanescent upon its slightest out-of-state modification. [at 78-79]
Beirne v. Gangemi, 69 N.J. Super. 220 (Law Div. 1961), aff'd 74 N.J. Super. 557 (App.Div. 1962), certif. den. 38 N.J. 307 (1962), is *400 to the same effect. Cf. Jamouneau v. Div. of Tax Appeals, 2 N.J. 325 (1949). If the judicial dictum of the Mira court on "legal interest" in N.J.S.A. 40:56-35 is not "closely reflective of the statutory intent," this court is not bound by that court's statement on the subject. English, supra, 43 N.J. Super. at 79.
In the present case the issue of the rate of interest to be charged when assessments are paid in installments is squarely before the court. N.J.S.A. 40:56-35 provides that "legal interest" is the rate of interest on an assessment paid in installments. In construing the statute, the words "legal interest" should be accorded their commonly understood meaning. Fiscella v. Nulton, 22 N.J. Super. 367 (App.Div. 1952). Words which have been used for many years and which have definite and commonly understood meaning should be accorded that meaning, and reference to authorities recognized for their definitions, such as Black's Law Dictionary, may be made by the court to determine the commonly accepted meaning of words. Fiscella, supra, at 375. Black's Law Dictionary (5 ed. 1979) defines legal interest as "[t]hat rate of interest prescribed by law as the highest which may be lawfully contracted for or exacted." Id. at 805. Our courts define "legal" rate as "the rate permitted to be contracted under the usury statute." Busik v. Levine, 63 N.J. 351, 356 (1973); Wayne Tp. v. Cassatly, 137 N.J. Super. 464 (App.Div. 1975), certif. den. 70 N.J. 137 (1976). In the latter case the court alluded to a "legal rate of interest" and cited N.J.S.A. 31:1-1 as establishing such rate. Cassatly, 137 N.J. Super. at 475. In Jersey City v. Flynn, 74 N.J. Eq. 104 (Ch. 1908), modified on other grounds sub. nom. Jersey City v. Jersey City Water & Supply Co., 76 N.J. Eq. 607 (E. & A. 1909), the court said:
That the city would, in any event, be chargeable with interest at the legal rate is, I think, perfectly plain. The rate chargeable for the forbearance of money is, in the absence of agreement to the contrary, the legal rate. Jersey City v. O'Callaghan, 41 N.J.Law (12 Vr.) 349, is in point. It was there held by the court of errors and appeals that where damages for breach of contract are to be assessed or where an equivalent is to be given for the use of money forborne, the statutory rate is the rate to be computed. [at 124]
*401 Originally the usury statutes, N.J.S.A. 31:1-1 et seq. (Title 31) were quite simple. There was basically one rate of interest, 6%. However, as the money market became more complex, so did our usury laws. The Legislature has attempted to respond to changes in the money market by a myriad of changes in the usury statutes which comprehend Title 31, and all the provisions of Title 31 must be considered in attempting to determine what is "legal interest."
The Legislature added three sections to Title 31 in 1969 suspending the statutory rate of interest limitations applicable to borrowing by municipalities. L. 1969, c. 137. The three sections are N.J.S.A. 31:1-7, -8 and -9. N.J.S.A. 31:1-7 provides as follows:
Notwithstanding the provisions of any other law, statute or regulation applicable to or constituting any limitation on the maximum rate of interest per annum payable on bonds, notes or other obligations, or as to annual interest cost to maturity of money borrowed or received upon issuance of bonds, notes or other obligations, every county, municipality, school district, body corporate and politic, district or public authority, agency, commission or other public institution heretofore or hereafter created by the State, any county, or municipality or by one or more counties or municipalities, is hereby authorized and empowered to contract to pay interest on or an interest cost per annum for money borrowed and evidenced by bonds, notes or other obligations without limit as to the rate of interest per annum payable thereon or as to the annual interest cost to maturity of the money borrowed.
When considering borrowing by a municipality there is then no limit on the rate of interest which it may pay according to Title 31.[4] "Legal interest" is therefore market interest when municipal borrowing is involved. Market interest is the "legal interest" which a municipality may pay and it is the "legal interest" which it should charge. By equating the interest rate a municipality should charge with the interest rate it may pay, the municipality raises no more money than it is required to pay and hence does not run afoul of the interdictions set forth in McNally v. Teaneck Tp., supra. The cost of the money borrowed *402 is then borne by those benefited landowners who have its use while they pay the assessments in installments.
By virtue of N.J.S.A. 40:56-35 an owner of benefited property is a debtor of the township which is the owner's voluntary creditor. When a township determines to become the voluntary creditor of an owner under N.J.S.A. 40:56-35 because, as in this case, the township has in turn borrowed the money to pay for the improvements, the rate of interest should reflect that decision. In contrast, if payment of the assessment is to be made under N.J.S.A. 40:56-32 and is not made within two months of the confirmation date then a rate of interest should be charged reflecting that the township is the involuntary banker of the owner of the benefited property who is delinquent in his payment. N.J.S.A. 54:4-67 establishes the interest rate when a municipality has become the involuntary creditor of a delinquent taxpayer or of an owner of a benefited property who is delinquent in payment of an assessment. In East Orange City v. Palmer, 52 N.J. 329 (1968), the Supreme Court analyzed N.J.S.A. 54:4-67 and commented as follows:
This is not to say that interest is penal. On the contrary it is basically compensatory ... but the rate is designedly such that it will not be worth the taxpayer's while to make the municipality his involuntary banker. [at 334; emphasis supplied]
Since interest under N.J.S.A. 54:4-67 serves to induce timely payment, Atlantic City v. New Jersey Economic Develop. Author., 5 N.J. Tax 137 (Tax Ct. 1983), aff'd o.b. 6 N.J. Tax 344 (App.Div. 1984), and since the property owners have been given permission to pay in installments, N.J.S.A. 54:4-67 does not fix the interest to be charged on the installments.
A careful analysis of the applicable statutes themselves leads to the conclusion that interest of 8% or 18% a year, depending on the amount of the assessment, may not be charged on assessments paid in installments. N.J.S.A. 40:56-32 specifically provides that when any assessment is not paid within two months of confirmation interest shall be imposed on *403 the assessment at the rate prescribed for unpaid taxes. The statute is short, clear and precise. By comparison N.J.S.A. 40:56-35 contains two provisions for the payment of interest on assessments made for local improvements. First, if the governing body provides by resolution for the installment payment of assessments made for local improvements, legal interest is to be charged. Second, the same paragraph of the same statute which thus provides for legal interest on installments also provides:
If any such installment shall remain unpaid for thirty days after the time when the same shall have become due the whole assessment or balance due thereon shall become and be immediately due, shall draw interest at the rate imposed upon the arrearage of taxes in such municipality and be collected in the same manner as is provided by this subtitle for other past due assessments. [N.J.S.A. 40:56-35]
If, as the municipality argues, it may charge the same rate on installment payments of assessments that it charges on delinquent taxes the carefully drawn distinction between N.J.S.A. 40:56-32 and N.J.S.A. 40:56-35 and the carefully worded distinction within N.J.S.A. 40:56-35 would be meaningless. However, one of the cardinal rules of statutory construction is "that full force and effect must be given, if possible, to every word, clause and sentence of a statute.... A construction that will render any part of a statute inoperative, superfluous or meaningless, is to be avoided." Hoffman v. Hock, 8 N.J. 397, 406-407 (1952).
Both N.J.S.A. 40:56-32 and N.J.S.A. 40:56-35 were adopted at the same time. N.J.S.A. 40:56-32 was enacted as L. 1917, c. 152, Art. XX, § 28, p. 382. Similarly, N.J.S.A. 40:56-35 was enacted as L. 1917, c. 152, Art. XX, § 43, p. 392. It is entirely reasonable for one Legislature to have prescribed two different interest rates: one rate if assessments are paid on time in accordance with an approved installment schedule and a different rate if an assessment or installments are paid late. Further, N.J.S.A. 40:56-35 was amended by L. 1934, c. 167, § 1, in *404 a manner not pertinent to the issues before the court. No change was made in the installment or interest provisions. The statute was again amended by L. 1983, c. 169, § 1 to allow installments to be paid over 20 years, the amendment repeating the words "legal interest." Two Legislatures have therefore reviewed the statute and have amended it without any change in the interest provisions.
Beyond the clear wording of the statutes are the limitations on levying special assessments on benefited property set forth in McNally v. Teaneck Tp., 75 N.J. 33 (1977). In that case the township adopted an ordinance authorizing the paving of certain streets and the installation of curbs along those streets. The cost of these local improvements was assessed against the lands in the vicinity of the improvements in accordance with N.J.S.A. 40:56-1 et seq. The Court stated that municipalities are authorized to pave or repave a street and to install curbing along a street as local improvements. N.J.S.A. 40:56-1d and e. "By definition a local improvement is one the cost of which in whole or in part `may be assessed upon the lands in the vicinity thereof benefited thereby.' N.J.S.A. 40:56-1." McNally, supra, 75 N.J. at 39. Part of the costs for local improvements may be paid by the municipality. N.J.S.A. 40:56-12. However, in making assessments the municipality is bound by certain guidelines.
The total amount of the assessment levied cannot exceed the total project cost less any municipal contribution. N.J.S.A. 40:56-24. Further, all assessments are to be "as nearly as may be in proportion to and not in excess of the peculiar benefit, advantage or increase in value which the respective lots and parcels of real estate shall be deemed to receive by reason of such improvement." N.J.S.A. 40:56-27. If the total cost exceeds the assessments, the municipality must pay the difference. N.J.S.A. 40:56-37....
....
The two statutory ceilings that the total assessments may not exceed the total costs and that the individual assessment must not be in excess of the *405 enhanced value assure property owners they will not be charged more than a fair share of the improvement cost. [McNally, supra, 75 N.J. at 40, 43]
The two ceilings are constitutionally based. First, "[e]xaction of more than the special benefit to the property owner would constitute a taking of private property for public use without compensation. Norwood v. Baker, 172 U.S. 269, 19 S.Ct. 187, 43 L.Ed. 443 (1898); The Tidewater Company v. Coster, 18 N.J. Eq. 518, 526-531 (E. & A. 1866)." McNally, supra, 75 N.J. at 43. See U.S. Const., Amend. V; N.J.Const. (1947), Art. I, par. 20. Secondly, "[t]he scheme of the local improvement law makes it abundantly clear that its function is not to raise funds for revenue purposes. See generally Salomon v. Jersey City, 12 N.J. 379 (1953)." McNally, supra, 75 N.J. at 43-44. Revenue raising from real property is a function of local property tax assessing which can be done only in accordance with the constitutional provision requiring that property be assessed for taxation purposes under general laws and by uniform rules. N.J. Const. (1947) Art. VIII, § 1, par. 1. The total amount sought to be raised by a special assessment levy may not exceed the costs incurred by the municipality in making local improvements which benefit only certain properties lost local improvement assessments be misused as tax measures to raise funds for general revenue purposes. Assessments are made pursuant to the State's police power but are not general taxes. A governmental objective to raise revenue is unconstitutional since raising revenue by way of a local improvement ordinance is not a legitimate governmental purpose. Cf. Gross v. Ocean Tp., 92 N.J. 539 (1983) rev'g 184 N.J. Super. 144 (App.Div. 1982) (Township's method of arranging for towing of certain motor vehicles was an improper and unauthorized revenue-raising scheme beyond the limits of municipal power).
In McNally, the court was concerned with the methodology of valuing property for the purpose of allocating the cost of improvements. The court considered the principal amount of *406 each assessment. It did not consider the amount of interest to be charged. However, there is no reason to distinguish between principal and interest when applying the rules that assessments for local improvements are not to result in the taking of private property for public use without compensation and are not to be used to raise funds for revenue purposes. It costs the municipality 9% interest a year to borrow the money for a period of ten years, whereas it is charging as high as 18% a year for that same period. This it may not do. A local improvements ordinance establishes a method for recovering expenditures made for local improvements. It may not be a device for raising additional revenue. Merely because interest rather than principal is involved the township may not ignore the statutory requirements of the local improvements law, N.J.S.A. 40:56-1 et seq., particularly N.J.S.A. 40:56-24, which provides that the "total amount of the assessment levied upon the real estate benefited by the improvement shall not exceed the cost thereof."
"The ordinary rule is that in the absence of some statute expressly or impliedly authorizing interest, interest cannot be allowed on an assessment nor included therein." I Page & Jones, Taxation By Local and Special Assessments, § 475 at 721 (1909); footnote omitted. Since N.J.S.A. 40:56-35 explicitly permits the imposition of interest upon the deferred payment of assessments, such a charge is beyond challenge if the statute providing for the charge is constitutional.
In Oliver v. Whittaker, 122 Ark. 291, 183 S.W. 201 (1916), the court said that "[a]ll the authorities which are brought to our attention seem to agree that the Legislature may authorize the collection of interest on postponed payment of assessments." 183 S.W. at 202. Two New Jersey cases are cited as supporting the court's conclusions: Watson v. Elizabeth City, 42 N.J.L. 508 (Sup.Ct. 1880) and Johnson v. Trenton City, 43 N.J.L. 166 (Sup.Ct. 1881). In both New Jersey cases interest *407 was permitted from the date of confirmation of the assessment to the date of payment.
In Summers v. Cole, 144 Ark. 494, 223 S.W. 721 (1920), the court also said:
It is not within the power of the Legislature to authorize assessments in excess of the estimated benefits, even for the purpose of paying interest on bonds ... but the Legislature can authorize the charge of interest on postponed assessments, and such interest on assessments is not to be treated as a part of the cost of improvement, but may be imposed in addition to the assessed benefits. [223 S.W. at 724; citations omitted]
To the same effect is Benton v. Nowlin, 187 Ark. 738, 62 S.W.2d 16 (1933):
The interest on deferred payment of assessments, however, is no part of the original cost of improvement, but is a legitimate charge for the use of the money of which the appellants have received the benefit. They might have paid the assessment of benefits against their property in cash and so avoided the payment of any interest which might be imposed. On this theory the general rule has been formulated that the Legislature may authorize the collections of interest on postponed installments of assessments. In the case of Oliver v. Whittaker, 122 Ark. 291, 183 S.W. 201, 202, it is stated, in effect, that the value of benefits must be fixed at the time they accrue to the property from the construction of the improvement, but interest on the deferred installments becomes also a part, as it accrues, of the benefits, and payment thereof may be exacted.... [W]hen authorized by the statute, ... [certain entities] do have this right [to collect interest on installments] and it is not to be taken as a part of the cost of construction, nor effect an increase in the assessment of benefits within the meaning of the law. [62 S.W.2d at 19]
This was in response to a constitutional challenge by owners of benefited property to a statute which called for the payment of interest on deferred assessments on the ground that by charging interest more than the special benefits were being impermissibly received by the district from the owners and more than the improvement costs were being impermissibly exacted by the district from the owners.[5]
*408 N.J.S.A. 40:56-35, which imposes an interest charge on the deferred payment of assessments, is constitutional if it meets the two tests of McNally. It does so by using legal interest as the charge on the installment payment of assessments and by having legal interest defined in accordance with N.J.S.A. 31:1-7, -8 and -9.
N.J.S.A. 40:56-32 applies when a confirmed assessment is not paid within two months after the date of the confirmation of the assessment. However, N.J.S.A. 40:56-32 does not apply when the governing body of a municipality provides that the owners of real estate upon which an assessment for improvements has been made may pay the assessment in installments. Once the governing body acts in this entirely permissible manner in accordance with the terms of N.J.S.A. 40:56-35, then that statute applies, and the interest which may be charged under such circumstances is fixed by that statute. The rate of interest to be charged under those circumstances is "legal interest."
Counsel for Serkin will prepare and submit a judgment under R. 4:42-1(b) providing as follows:
1. The municipality shall charge interest at the rate of 9% a year on the assessments paid in installments which are the subject of this litigation.
2. Interest is payable on the unpaid balance of the assessments from the time of confirmation. Hoboken Land & Improvement Co. v. Marvin 51 N.J.L. 285 (Sup.Ct. 1889).
3. Delinquent installments which shall remain unpaid for 30 days shall become due and accrue interest in accordance with N.J.S.A. 40:56-35.
4. Any refunds due to plaintiffs by virtue of the judgment shall be credited against their installment payments due in 1984.
NOTES
[1] Huxley also challenged the amount of the assessment against its property, but that dispute with defendant was settled.
[2] Such interest paid on the funds prior to confirmation of the assessments is properly included in the amount to be raised by the assessments. N.J.S.A. 40:56-24; Henderson v. Lyndhurst Tp., 11 N.J. Misc. 651, 167 A. 743 (Sup.Ct. 1933).
[3] Plaintiffs also argue that the maximum interest rate which can be charged on the installments is 6% in accordance with N.J.S.A. 40:175-5. However, that statute was repealed by L. 1979, c. 249, § 1, effective December 19, 1979, prior to the date of the confirmation of the assessments in this matter.
[4] Of course the governing body may borrow funds only in accordance with procedures established by law.
[5] This interest is distinct from interest charged on assessments to enforce prompt payment. "The right to charge interest on overdue assessments is in the nature of enforcing a penalty and may be justified on that theory." I Page & Jones, supra, § 475 at 727. Cf. Atlantic City v. New Jersey Economic Develop. Author., supra.